HON. JAMES BARRETT,  
HON. WILLIAM C. WILSON,  }  ASSISTANT JUDGES.  
HON. BENJAMIN H. STEELE, )

---

### HIRAM ATKINS *v.* JAMES N. JOHNSON.

*Libel. Contribution between Wrong-Doers.*

A journalist cannot protect himself from the consequences of publishing a libelous arti-
cle by assurances of its truthfulness, and by a contract of indemnity from the writer
of the libel. The case comes within the rule that there can be no contribution or indem-
nity between joint wrong-doers.

Nor will such contract avail the publisher, though renewed after the publication of the
libel, and made in consideration that he would not disclose the name of the writer on
its being demanded by the victim of the article.

ASSUMPSIT as per declaration, which is set out in the opinion
of the court. Trial on general demurrer to the declaration, at
the March term, 1870, PECK, J., presiding. The court, *pro*

*forma*, adjudged the declaration insufficient, and rendered judgment for the defendant to recover his costs. Exceptions by the plaintiff.

*C. J. Gleason*, for the plaintiff, cited *Fletcher* v. *Harcut*, Hutton Rep., 55 ; Chitty on Contracts, 503–504 ; *Betts et al.* v. *Gibbons*, 29 Eng. Com. Law, 57 ; *Adamson* v. *Jarvis*, 13 Ib., 403 ; *Wooley* v. *Batte*, 12 Ib., 417 ; *Stone* v. *Hooker*, 9 Cowen, 154 ; *Ives* v. *Jones*, 3 Iredell, 538 ; *Avery* v. *Halsey*, 14 Pick., 174. And to the point that a party may indemnify himself against the consequences of an unlawful act already done, *Kneeland* v. *Rogers*, 2 Hall, 579 ; *Haskett* v. *Tilly*, 11 Mod., 93 ; *Smith et al.* v. *Barstow*, 2 Doug. Mich., 155 ; *Armstrong* v. *Toler*, 6 Curtis U. S., 587 ; *Hall* v. *Huntoon*, 17 Vt., 244 ; *Given* v. *Driggs*, 1 Caines, 450 ; *Doty* v. *Wilson*, 14 John., 377 ; *Williamson* v. *Henly*, 19 Eng. Com. Law, 299.

*Carpenter*, for the defendant, cited *Spaulding* v. *Oakes*, 42 Vt. ; 2 Smith L. Cases, 393 [337] and notes ; *Colburn* v. *Putnam*, 11 Compt., Mees. & Ros., 73, and cases there cited ; *Merryweather* v. *Nixan*, 8 T. R., 186 ; *Shackell* v. *Rosier*, 2 Bing. N. C., 634 ; also in 29 Eng. Com. L., 695 ; *Fivaz* v. *Nicholls*, 52 Eng. Com. L., 501, and cases there cited ; *Achison* v. *Miller*, 18 Ohio (O. S.), 2 Ohio, (N. S.), 1 ; *Cumston* v. *Lambert*, 18 Ohio, 81 ; *Moore* v. *Appleton*, 26 Ala., 633 ; *Davis* v. *Burnett*, 4 Jones' Law (N. C.), 71 ; *Bailey* v. *Bussing*, 28 Conn., 455 ; Hilliard on Torts, 179, 185, 195, note *a*, and cases there cited ; *Gregg* v. *Wyman*, 4 Cush., 326 ; *Toler* v. *Armstrong*, 4 Wash. C. C., 297, and 11 Wheaton, 258.

The opinion of the court was delivered by

PIERPOINT, C. J. The case comes into this court upon a general demurrer to the plaintiff's declaration.

The declaration alleges that " on the 22d day of July, 1867, the defendant, by his agreement in writing of that date, undertook, and promised, the plaintiff that, in consideration that the plaintiff would print and publish an article in the ARGUS & PATRIOT, a

weekly newspaper published in Montpelier by the plaintiff, entitled " A Jack at all Trades Exposed," that said article was all true, that there was enough to back it up, &c., and that he, the said defendant, would defend and save harmless the plaintiff from all damage and harm that might accrue to the plaintiff in consequence of publishing said article. That said article, if untrue, was a libel upon the character of one John Gregory; that relying upon the said promises of the defendant he published the article; that after said publication the said Gregory called upon the plaintiff for the name of the writer of the article; that thereupon the defendant requested the plaintiff not to give the said Gregory the name of the writer, and, in consideration thereof, promised the plaintiff that he would save him from all harm; that if said Gregory sued the plaintiff, that he, the defendant, would defend the suit, prove the charges, and save the plaintiff from all trouble and expense in the premises. The plaintiff, relying thereon, withheld the name of the defendant as the author of said article; that the said Gregory sued the plaintiff; that the defendant failed to defend the said suit, and the said Gregory recovered a judgment against the plaintiff, which he has been compelled to pay, and the defendant refuses to indemnify him.

The plaintiff is here seeking to compel the defendant to indemnify him for the damage which he has sustained, in consequence of publishing a libel, at the request of the defendant, and from the consequences of which the defendant agreed to save him harmless.

The question is, whether such an agreement as the plaintiff sets out in his declaration can be legally enforced.

The general principle, that there can be no contribution or indemnity, as between joint wrong-doers, is too well settled to require either argument or authority.

To this rule there are many exceptions, and prominent among them is the class of cases where questions arise between different parties, as to the ownership of property, and a third person, supposing one party to be in the right, upon the request and under the authority of such party, does acts that are legal in themselves, but which prove in the end to be in violation of the rights of the

other party, and he, in consequence thereof, is made liable in damages. If in such case there was a promise of indemnity, the law will enforce it, and if there was not, if the circumstances will warrant it, the law will imply a promise of indemnity, and enforce that. Of this class are most of the cases cited and relied upon by the counsel for the plaintiff, such as, *Betts* v. *Gibbons ; Adamson* v. *Jarvis ; Wooley* v. *Batte ; Avery* v. *Halsey*, &c. But we apprehend that no exception has ever been recognized broad enough to embrace a case like the present; indeed such an exception would be a virtual abrogation of the rule.

In this case, these parties in the outset conspired to do a wrong to one of their neighbors, by publishing a libel upon his character. The publication of a libel is an illegal act upon its face. This, both parties are presumed to have known. The publication not only subjects the party publishing to a prosecution by the person injured for damages, but also to a public prosecution by indictment. In either case, all that would be required of the prosecutor would be to prove the publication by the party charged. The law in such case presumes malice and damage, and the prosecutor would be entitled to a judgment, unless the party charged could introduce something by way of defense that would have the effect to discharge him from legal liability ; failing in that, the party would be made liable upon a simple state of facts, all of which he perfectly understood at the time he commenced his unjustifiable attack.

In this case, both these parties knew that they were arranging for and consummating an illegal act, one that subjects them to legal liability, hoping, to be sure, that they might defend it; but the plaintiff, fearing they might not be able to do so, sought to protect himself from the consequences, by taking a contract of indemnity from the defendant. To say under such circumstances that these parties were not joint wrong-doers, within the full spirit and meaning of the general rule, would be an entire perversion of the plainest and simplest proposition. This being so, the law will not interfere in aid of either. It will not inquire which of the two are most in the wrong, with a view of adjusting the equities between them, but regarding both as having been understandingly

11

engaged in a violation of the law, it will leave them as it finds them, to adjust their differences between themselves, as they best may.

But it is said in argument, that to apply this rule in a case like the present is an encroachment upon the "freedom of the press." We do not so regard it. The freedom of the press does not consist in lawlessness, or in freedom from wholesome legal restraint. The publisher of a newspaper has no more right to publish a libel upon an individual, than he or any other man has to make a slanderous proclamation by word of mouth.

It is also said that the publisher of a newspaper, in his desire to furnish the public with information of what is transpiring in the community, is liable to be misled and deceived in regard to what he publishes. This is undoubtedly true, and it is equally true that he often is deceived ; but in such case he ordinarily has ample means of relieving himself, either by correcting the error, or giving up the name of the author of the objectionable communication. Had the plaintiff in this case given the name of the author of the article to Gregory when he asked for it, he would undoubtedly have cast the responsibility upon the shoulders of him who ought to bear it. By refusing to do this, he put himself in the gap, and voluntarily assumed the whole responsibility, relying on the defendant's guaranty to indemnify him.

But it is further insisted, that what is alleged to have transpired between the plaintiff and defendant after Gregory had called on the plaintiff for the name of the author, constituted a new and independent contract, based upon a new and legal consideration. This proposition we think is not tenable. What passed between the parties on that occasion is a mere reiteration of the original agreement, and based substantially upon the same consideration. It was evidently so regarded by the pleader when he drew the declaration. It is all incorporated in the same count, being a simple narration of the events as they transpired. The promise on that occasion was to save the plaintiff from all harm, trouble and expense in the premises, in case the said Gregory should sue him.

This question was fully considered in the case of *Shackell* v. *Rosier,* 29 Com. L., 438. In that case the plaintiff, Shackell, was

the publisher of a newspaper. The defendant applied to him to publish an article that was libelous on its face, but which the defendant assured him was true. After the publication, the party aggrieved brought his action against the plaintiff for the libel. The defendant thereupon promised the plaintiff, that if he would defend said suit, he, the defendant, would save harmless and indemnify the plaintiff from all payments, costs, charges and expenses, &c. On trial, there was a verdict for the plaintiff. This was arrested and set aside. PARK, J., says it is impossible to look at this declaration, without seeing that the publication of the libelous matter formed part of the consideration for the defendant's promise. " It would be productive of great evil, if the courts were to encourage such an engagement as this, and thereby hold out inducement to the propagation of illegal and unfounded charges ; " and then quotes from Lord Lyndhurst as follows : " I know of no case in which a person, who has committed an act, declared by the law to be criminal, has been permitted to recover compensation against a person who has acted jointly with him in the commission of the offense." VAUGHN, J., says : " In this case the court itself would become accessory to the publication of libels, if it was to enforce such a contract as the present." BOSANQUET, J., says : " I am of opinion that the promise and consideration both appear on the record to be illegal. The promise is to save harmless and indemnify the plaintiff, &c. It appears that the publication was made at the solicitation of the defendant, a publication manifestly illegal, and open to indictment ; at once the subject of an action at the suit of the party offended, and an offense against the public. The case does not therefore fall within the principle laid down by Lord Kenyon, in *Merryweather* v. *Nixan*, as the act done by the plaintiff here was unlawful within his own knowledge." The principles recognized and promulgated in this decision cover substantially the whole case now before us.

The position, in which the facts confessed upon the record place the defendant, is not an enviable one. He seems to have originated the mischief—to have induced the plaintiff to aid him in carrying it into effect, by assurance of the truth of the statements, and a promise of indemnity, and after standing by and seeing the

plaintiff amerced in damages, takes advantage of a strictly legal defense, and throws the whole responsibility upon the plaintiff. Personally, it would have given me satisfaction to have decided the case for the plaintiff, if it could have been done without violating well-established and salutary rules of law.

Judgment of the county court is affirmed.