FRANK ARNOLD, Respondent, v. THE SAYINGS COMPANY,
Appellant.

St. Louis Court of Appeals, December 21, 1897.

1. **Tortfeasors, No Contribution Between**: DAMAGES FOR LIBEL.
There can be no contribution between tortfeasors. The fact that
other newspapers had settled the damages done by their publica-
tions, can not be taken into consideration by the jury in assessing
the damages against the defendant occasioned by its publication.
Damages done to "A" by the tortious act of "B" can not be offset
against damages done to "A" by the separate tortious act of "C".

2. **Libel**: PRIVILEGED COMMUNICATION. Garbled extracts and false
reports of a privileged communication are not protected by the law
under the guise of the freedom of the press.

3. **Freedom of the Press.** The term "freedom of the press" con-
sists in a right, in the conductor of a newspaper, to print what he
chooses without any previous license, but subject to be held respon-
sible therefor to exactly the same extent that any one else would be
responsible for the publication.

4. **Libel**: DAMAGES, EXEMPLARY: MALICE, EXPRESS OR IMPLIED. It mat-
ters not whether malice be actual or that other kind which is inferred
from the wrongful act without justifiable cause or excuse; the jury
may upon the proof of either give exemplary damages.

5. ———: ———: ———: LIABILITY OF NEWSPAPER FOR ACTS OF ITS
REPORTER. The proprietor of a periodical can not escape upon the
ground of the wrongful act of his reporter in publishing a libelous
article; he is responsible for what appears in his periodical, and can
only escape liability by showing that notwithstanding the libelous
character of the publication, it is one which he had a right to pub-
lish.

6. ———: ———: MEASURE OF DAMAGES. The amount of damages to
be assessed in actions of this character is peculiarly within the
province of the jury, and in estimating the damages they may take
into consideration the character of the defamation, the circumstances
under which it was published, the extent of the circulation of the
paper, and the publicity thus given to the libel, the absence of any
apology, the fact that the publication was a made up story, garbled
from a comparatively harmless letter, and the pecuniary circum-
stances of the defendant.

*Appeal from the St. Louis City Circuit Court.*—Hon. JACOB KLEIN, Judge.

AFFIRMED.

SEYMOUR D. THOMPSON and NATHAN FRANK for appellant.

The first assignment of error is that the court erred in giving to the jury the following form of verdict, to be filled up by them in case they should find for the plaintiff: "We, the jury in the above entitled cause, find the issues therein joined in favor of the plaintiff and assess his compensatory damages at the sum of $——; and further assess his exemplary damages at the sum of $——; making a total of $——." The next ground on which a reversal of this judgment is asked is that the court erred in modifying an instruction requested by the defendant, by eliminating the portions in the brackets. The instruction as requested was as follows: "The jury are further instructed that, under the constitution of the State of Missouri [it is exclusively for the jury to determine the law of libel; that] upon the question whether the publication for which this action is brought was or was not a libel, and consequently is or is not properly the subject of this action for damages, the jurors are the sole judges of the law as well as of the facts [and are not conclusively bound by the instructions given them by the court, though they may properly consider those instructions as guides in determining the issues, and though they are bound by the instructions given by the court upon all other questions; and], that, before the jury can find a verdict for the plaintiff, they must find that the article published by the defendant is a libel in point of law." The court, making erasures with a blue pencil so as to

obliterate the text, changed this instruction by erasing the words in brackets so as to make it read as follows: "The jury are further instructed that, under the constitution of Missouri, upon the question whether the publication for which this action is brought was or was not a libel, and consequently is or is not properly the subject of this action for damages, the jurors are the sole judges of the law as well as the facts, and that, before the jury can find a verdict for the plaintiff, they must find that the article published by the defendant is a libel in point of law." The elements of this instruction, as tendered, were: *First*, That, under the constitution of this state, in actions for libel, the jurors are the judges of the law as well as of the facts. *Second*, that they are consequently not bound by the instructions of the court on the main question of libel or no libel. Then it contains the proper caution, that on all other questions they are bound by the instructions of the court. The complaint which is now made of the modifications of this instruction by the court is that the court erased all that part of it which told the jury that, on the main question, whether or not the publication was libelous, they were not bound by the instructions of the court, but that those instructions were advisory merely. The court also at the outset eliminated the very clear direction embodied in the second and third lines of the instruction in the words, "it is exclusively for the jury to determine the law of libel"—a direction which, it is submitted, is the clear law of this state. State v. Armstrong, 106 Mo. 395; Arnold v. Jewett, 125 Mo. 241. The next ground for reversing this judgment which will be argued is that the court erred in refusing two instructions tendered by the defendant upon the subject of the rule of law relating to what is called a privileged occasion in the

law of libel. The first of these instructions was as follows: "A publication, to be privileged, must be made on a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made, in good faith, the law does not imply malice from the publication itself, as in ordinary cases of libel, but malice must be proved. If, therefore, the jury find from the evidence that the publication in the present case was made in good faith, upon information gotten from the files of the chief of police of the city of St. Louis, and that such information furnished probable cause for such publication, and that such publication was made without any express malice on the part of the defendant, its agents or servants, that is to say, without any express purpose of injuring or defaming the plaintiff, then the jury are instructed that they must find for the defendant." The second of these instructions refused, which, as tendered to the court, preceded the above, merely amplifies and applies the principle contained in the above instruction, and was as follows: "6. The court instructs the jury that a publisher is privileged to publish all matters in which the general public have an interest, and is not liable in damages for the exercise of this privilege from the mere fact that matter so published may turn out to be untrue, provided he published it in good faith and in the *bona fide* belief of its truth, and that there was probable cause for so believing, and provided the occasion is not used for the malicious purpose of defaming and injuring the person concerning whom the publication is made. . The court also instructs the jury that the interest which the public have in the detection of crime and in knowing whether criminals are at large among them, is a sufficient interest, within the meaning of this rule of law, to give a privilege to a publication concerning the supposed

criminal, provided such publication is made in good faith and upon probable cause. If, therefore, the jury find from the evidence that the publication in question in this case was made by the defendant in good faith, with the *bona fide* belief on the part of the agents of the defendant concerned therein that it was true, and if the jury further find that there was probable cause for such belief, and that in publishing it there was no purpose on the part of this defendant or its agents or servants concerned therein, to injure or defame this plaintiff, then the jury will find for the defendant."
It is also respectfully submitted that the court erred in refusing to give the instruction tendered by the defendant on the subject of nominal damages. This instruction was as follows: "18. The court instructs the jury that, if they find that the publication was a libel, but that no material damage was thereby caused to the plaintiff, they should return a verdict for nominal damages merely, that is to say for one dollar or one cent." The question whether exemplary damages can be bottomed upon nominal damages, came before the St. Louis court of appeals last year in the case of Favorite v. Cottrill, 62 Mo. App. 119, but was left by the court undecided; though the court did decide that, in the state of the pleadings and evidence, a verdict for exemplary damages bottomed upon nominal damages merely, would not be disturbed. The verdict was for $1 as compensatory damages and $5,000 as exemplary damages. Judge BIGGS, speaking for the court, after saying that the authorities are not uniform on the question, and after quoting from a leading case in favor of the proposition now contended for (Stacy v. Portland Pub. Co., 68 Mo. 279), says: "The question is one concerning which much may be said on both sides. It is not necessary, however, for us to determine which is, in

our opinion, the better rule, for the reason that the facts of the case here do not bring it within the reasoning of the decision in Stacy v. Publishing Co., *supra*. Here the injury was not theoretical or fanciful, but quite substantial, and the plaintiff was only precluded from recovering substantial damages because of the state of the pleadings. We will, therefore, overrule the assignment.'' The remaining ground of reversal which we earnestly ask the court to consider is that the verdict returned by the jury is so excessive as to indicate passion or prejudice, or a misunderstanding of their duties, on the part of the jury. The plaintiff's own evidence showed that he had not been damaged at all by the publication in question. The court correctly instructed the jury that they were not warranted in giving damages based on remote contingencies which might or might not happen, or upon mere speculation or surmise. We have then in this case, as a basis for a verdict of $1,000 compensatory damages and $500 exemplary or punitive damages, three things: *First*. The presumption of some damages flowing from the publication of untruthful and defamatory matter. *Second*. The evidence of the plaintiff himself, totally rebutting and overthrowing this presumption and showing that he had not been damaged at all. *Third*. The possibility of future damage accruing to him from the publication, which, in view of the fact that he has not so far been damaged at all, although the publication was made two and a half years before the trial, can only fall within the category of mere suspicion and surmise. There is absolutely no rational basis in the evidence for such a verdict, and it must consequently be ascribed to the passions and prejudices of the jury. It must be ascribed to this, because it can not be ascribed to anything else. Such a verdict, it is submitted, can not

commend itself to any court.    Price v. Evans, 49 Mo.
116.

J. R. MYERS for respondent.

Malice is presumed by the publication of a libel
*per se* and also damages.    McGinnis v. Knapp & Co.,
109 Mo. 131; Callatan v. Ingram, 122 Mo. 355.    The
rule in libel and slander is the same.    In this case the
court did not leave the jury to say whether or not the
language used was slanderous, but told them that
"said words are presumed to have been spoken falsely
and maliciously," and they must find for plaintiff.    In
view of this I do not see how appellant can contend
that the court committed error in eliminating a few
lines from one of their nineteen instructions.    "Error
in refusing two instructions on the subject of "privi-
leged occasion."    Privileged occasion where the facts
are not disputed is a question of law to be determined
by the court.    There is no dispute about the facts of
this case.    Appellant in its second amended answer
admits making the publication.    In a stipulation be-
tween plaintiff and appellant filed in this cause at the
trial and set out in the record on page 13, admits
making and circulating the publication.    Appellant
did not plead in its second amended answer and in the
amendment to that filed at the trial of this case any
privileged occasion, but claimed that the insertion of
the article was a common newspaper mistake; that the
article was inserted by the reporter without authority
and against positive instructions of defendant, that
the publication was a mere reproduction of the letter
from Chief Covey to Chief Harrigan, that the article
was furnished them by the police of the city of St.
Louis, that four other reputable newspapers of the city
of St. Louis and plaintiff had settled with those repu-
table newspapers for $2,100.    These are the defenses

pressed forward by the defendant. The jury in this case found that substantial damage had been done for which they thought there was no reason or excuse, and we submit, under all the facts and circumstances of this case, the jury in assessing damages were lenient. There was no evidence that appellant published the article in the *bona fide* belief that it was true. There was no evidence that the publication "related to a matter affecting the public rights and the public interest." The communications were private. There was no evidence that appellant "believed that the statements therein contained were true, after investigating the truth thereof." There was no investigation; if there had been appellant would have found the article false. There can be no apportionment of damages in this class of cases, therefore the instruction given which is set out on page 16 of appellant's brief should not have been given.

BLAND, P. J.—This action was brought to recover damages for an alleged libel, published by the defendant concerning the plaintiff in the defendant's newspaper, called "The Star Sayings." The libel as set out in the petition reads as follows: "Frank Arnold, a lineman, who is wanted in Evansville.

"The authorities of Evansville, Indiana, have requested Chief Harrigan to locate Frank Arnold, who is wanted in Evansville, on suspicion of larceny. Arnold was formerly in St. Mary's Hospital in that city, leaving there on October 4th, a few days after the mysterious disappearance of $1,000 belonging to the inmates of the hospital, which had been turned over to the Mother Superior in charge of the institution for safe keeping. A few days previous to this an electric lineman visited the hospital, on the pretext that he had been sent to repair the wires

STATEMENT.

supplying the electric current. Immediately after the lineman's departure the money disappeared. The attaches of the hospital had observed Arnold acting suspiciously about the hospial for some days peering about every corner and nook of the building, and they suspect that he discovered the hiding place where the money was kept and "tipped off" the lineman, who secured the money when he visited the hospital. Arnold came to this city and was employed for a time in the Marine Hospital, but disappeared from there several days ago, and his present whereabouts is unknown."

The petition contained the other usual averments in actions for libel, and prays judgment for $5,000 actual damages, and $5,000 for punitive or exemplary damages. The answer, after a general denial, pleaded the following special matter: "That the statement which defendant published in said paper, the *Star-Sayings*, was furnished to defendant in the due course of its business as the publisher of such newspaper by the police authorities of the city of St. Louis, who had been requested by the police authorities of the city of Evansville, Indiana, to locate Frank Arnold. That the publication recited in the petition herein was merely a reproduction of matters communicated to this defendant by the said police authorities of the city of St. Louis as having been communicated to them by the police authorities of Evansville, Indiana. That the statement so communicated to the defendant by the police authorities of St. Louis was published by the defendant in good faith and without either malice or negligence, and without any purpose to injure or damage the plaintiff. Further answering, and in mitigation of damages, defendant says that the statement set forth in the plaintiff's petition herein, was inserted in the *Star-Sayings* newspaper by one employed by the

defendant as a reporter, contrary to the instructions given by the defendant to said reporter and in violation of the duty of said reporter to the defendant, and that the defendant has never approved or ratified the said act of its said reporter, but, on the contrary, has been ready at all times and is still ready to publish a full retraction of said statement in so far as it imputes to this plaintiff the commission of any offense or complicity in the commission of any offense, or in so far as it contains any matter calculated to injure his reputation.''

At the trial, and before submission to the jury, the court permitted the defendant in mitigation of damages to add the following amendment to its answer: ''Further answering, and in mitigation of damages, the defendant says that on the said 29th day of October, 1894, the same being the day on which the publication was made by the defendant, which is the subject of this action, took place, four other reputable daily newspapers published in the city of St. Louis, namely, the *St. Louis Republic*, the *St. Louis Post-Dispatch*, the *Westliche Post*, and the *Anzeiger des Westens*, acting independently of each other, and without any concert of action, published of and concerning this plaintiff statements similar to those published by this defendant for which the plaintiff now sues; that thereafter the plaintiff brought actions for libel against the proprietors of each of the said newspapers, which actions were settled by said proprietors by paying to the plaintiff a great sum of money, namely, an aggregated sum of twenty-one hundred dollars ($2,100). Wherefore the defendant says that in so far as the plaintiff has sustained damage in his character and reputation, he has sustained it by all the aforesaid publications, and this defendant ought not to pay for any damage sustained by the defendant (plaintiff) by

reason of said publications in said other newspapers. And the defendant pleads these facts for further purpose of showing a common mistake made by the agents and servants of reputable publications, which fact tends to negative the inference of malice." [1]

A reply was filed by plaintiff. The cause was tried by a jury, who returned a verdict for plaintiff and REPLY. assessed his actual damages at $1,000, and assessed punitive damages at $500. Motion for new trial and in arrest of judgment were filed and overruled, and the defendant brought the case here by appeal.

At the trial the making of the publication, as set out in the petition, was admitted, and for the purpose of the trial it was stipulated by the parties ADMISSION of publication. that at the time of making the publication the defendant's newspaper, the *Star-Sayings*, had a circulation in St. Louis, Missouri, and throughout the United States in excess of thirty thousand copies, and that the value of the property owned by the appellant at the date of the trial was in excess of $50,000. It appears from the testimony of the plaintiff, that prior to coming to St. Louis he had worked in St. Mary's Hospital at Evansville, Indiana; that he knew nothing whatever about the robbery or larceny spoken of in the published article; that at the date of the trial he was a medical student and the superintendent of the hospital of the College of Physicians and Surgeons in St. Louis; that the publication of the libel had not to the knowledge of plaintiff hindered him in his studies or interfered with his progress in his chosen profession; that since the publication he had visited Evansville and found that the people there had learned of the publication; that he could not tell and did not know to what extent he had been damaged by the publication. The testimony on

the part of plaintiff's witnesses showed that plaintiff had come to the Marine Hospital in the city of St. Louis, about the sixteenth or seventeenth of September, 1894, and had remained there continuously for about three and one half months, both day and night. There was no countervailing evidence to any of this testimony.   The defendant called James H. Smith, a police detective, who identified the following postal card:

"**$1,100 ROBBERY**.

"On October 4th a man came to St. Mary's Hospital, of this city, claiming to be an electric lineman. Said he was sent to St. Mary's Hospital to trace the trouble with some of the wires, they being out of order. He got into the Sister Superior's room and stole $1,100 in money—$800 of which was in paper and $300 in gold.   Most all the money belonged to inmates.   This man was evidently a professional crook.   Description: About thirty-five years old; weight 150 pounds; five feet eight inches high; dark hair; dark mustache; large white teeth; large round eyes; blue shirt with white buttons; dark pants, and dark vest; wore a cap. Very fluent talker.   Please keep a sharp lookout for a suspicious person with large amount of money, and address all information to      "GEO. L. COVEY,
                              "Supt. of Police.
"Evansville, Ind., Oct. 6, 1894."

Witness also testified to the following letter:

"EVANSVILLE, IND., Oct. 22, 1894.
"*Laurence Harrigan, Esq., Chief of Police, St. Louis, Mo.*
"DEAR SIR:—Inclosed find postal card of robbery which took place on the 4th of this month.   Previous to this robbery there worked at this hospital a man by the name of Frank Arnold, who, I am told, is now at

TESTIMONY. the U. S. Hospital in your city. One of our detectives was at this hospital sick while Arnold was there. He thought that Arnold was a slick citizen. Arnold had free access to all parts of St. Mary's Hospital and was familiar with the Sister Superior's room, and we thought he probably, after leaving the hospital, posted the party who done the job as to the surroundings at St. Mary's Hospital. Arnold is not supposed to have had any money when he left the hospital. I don't know where he is from, but am informed that he is now in your city at U. S. Hospital, either as a patient or employee. Arnold is about five feet nine inches tall, about thirty years old, light mustache, dark hair, weighs about 150 pounds and slender build.

"Have one of your detectives investigate him and find out all possible about him. Also if he has now or has had any great amount of money whilst there. If, on investigation, you find it important enough, I will send a man to see you about this matter. It could not be Arnold who done this job, as he was too well known at St. Mary's, but he may have got some one to do it and got part of the money.

"I am respectfully,

"GEO. L. COVEY,

"Supt. of Police."

The postal card and letter were offered and read in evidence. Smith testified that the postal card and letter were received by Chief of Police Harrigan, through the mail; by him turned over to Chief of Detectives Desmond; that the letter had been given to witness by Chief Desmond about the twenty-fifth of October, 1894, to investigate; that he did make the investigation and made the following report to Chief Desmond:

St. Louis, Oct. 26th, '94.

"*Wm. Desmond, Chief of the Detectives:*

"Sir:—I report that I investigated attached letter from George L. Covey, superintendent of police, of Evansville, Ind., asking us to investigate one Frank Arnold working at U. S. Marine Hospital, as it was thought that he may have assisted the chief (thief) in locating the $1,100 stolen at St. Mary's Hospital at Evansville, Ind., October 4th, 1894.

"On investigation, I find that Arnold went to work for the U. S. Marine Hospital September 22, 1894, and worked until October 1, 1894, for his board and bed, and on and after October 1, 1894, he is under pay. He bought an old uniform coat and vest and was unable to pay for them up to this time, and has not been seen with any money, and was working here for twelve days before the robbery, and had a good recommendation from St. Mary's Hospital, Evansville.

"Respectfully,

"James H. Smith,

"Detective."

The witness testified that he pasted this report to the letter from Evansville and laid them on the private desk of Chief Desmond; that he did not lay it on the reporters' table in the press room at the Four Courts, and did not know how the newspaper reporters got hold of the letter. The witness further testified that these letters were kept pasted in a large book with blank pages called "Foreign Record K," and did not know what became of the letters after he laid them on the desk in the private office of Chief Desmond; that the custom was to keep such letters secret, and not to give them out to the reporters. The reply of Chief of Police Harrigan to the Evansville chief was read in evidence by defendant, and reads as follows:

"October 26, 1894.

"*George L. Covey, Esq., Superintendent of Police,
Evansville, Ind.:*

"Referring to the matters of Frank Arnold working at U. S. Marine Hospital here, I find that Arnold went to work at the hospital September 22nd, 1894, and worked until October 1st, 1894, for his bed and board. On and after October 1st he was put on pay and bought an old uniform coat and vest, but up to the present time he has been unable to pay for it. Arnold has not been seen with any money since. He was working here for twelve days before the robbery, and has a good recommendation from St. Mary's Hospital, Evansville, Ind.

"Very respectfully,

"L. HARRIGAN,

"Chief of Police."

George E. Garrett, a witness for defendant, testified that at the date of the publication he was city editor of the *Star-Sayings*, and testified to the rules practiced in the office in regard to the verification of items of news brought in by their reporters which reflected upon private character; also exemplified the haste which attends the making up of the Sunday morning edition of a daily paper, and the amount of time allowed for making verification of news items; and stated that news items affecting the character of an individual were invariably investigated locally, and where possible also by wire at the home or former home of the accused, and that no avenue was left uncovered to verify or disprove any item; that the item published in this instance was brought in by Mr. Smith, a reporter, and that he endeavored to verify its accuracy by sending out two other reporters, Mr. Green and Mr. Galvin, one of them to the Marine Hospital; he did not remember that they telegraphed to Evans-

ville.   William F. Smith, a witness, testified that he was the reporter who wrote the article in question, and to the best of his recollection he got it from the reports sent out to the newspaper reporters' table by the chief of police or his secretary; that the office of the chief of police was at the Four Courts, and the reporters' table was in a room set apart for the accommodation of the daily papers and called the "press room." He testified that he had the letter of the Evansville chief of police and postal card before him, but did not see the report of Detective Smith at the time he wrote the article, and that it was not at that time pasted to the Evansville letter, nor did he see the letter of Chief Harrigan to the Evansville chief; that his orders were to verify all items reflecting on private character before turning them into the office. His testimony shows, however, that he took no steps to verify the one in question.

In rebuttal Chief Harrigan testified in substance, that the practice of his office with regard to showing communications to reporters depended upon the communication; that he did not think he gave the Evansville letter to the reporters; he did give it to Chief Desmond; that there was no reporters' table in his office or in the office of Chief Desmond, and that the letter was never on the reporters' table by his direction.

The defendant offered to prove that the plaintiff had brought suit against the *St. Louis Republic*, the *St. Louis Post Dispatch*, the *Westliche Post* and *Anzeiger des Westens*, for libels on account of publication of articles similar to the one in question and published on the same Sunday morning, and that on compromises of these several suits he had received $2,100. This proffered testimony was objected to by plaintiff; the objection sustained, and exceptions to the ruling

saved by defendant. The court gave for plaintiff the following instruction:

"The court instructs the jury that it stands admitted that the defendant made the publication set out in the plaintiff's amended petition, of and concerning the plaintiff. Therefore, the court instructs the jury that if you find from the evidence that the publication complained of is libelous and false, you should return a verdict for the plaintiff in such sum as you 'believe from the evidence, and under the instructions, will be a fair compensation for the injury, if any, naturally and probably done to the plaintiff's reputation and character by the publication in question."

"And the court further instructs the jury that if you believe from the evidence that the defendant in causing the publication to be made, acted recklessly and in wanton disregard of the plaintiff's INSTRUCTIONS. right, then in addition to the compensation for an actual damage done, you may allow such exemplary or punitive damages, as under all the circumstances, you think the defendant ought to be punished with."

"The court instructs the jury that the law presumes that a man intends the natural consequences of his acts. If, therefore, the jury believe and find from the evidence that the natural consequences of the publication complained of was to defame and injure plaintiff in his reputation and character, they may properly infer that such was the intention of defendant; and if you further believe and find from the evidence that the publication complained of was libelous and false, you may infer that it was maliciously made."

The court instructed the jury for defendant as follows:

"The court further instructs the jury that it is proper for them to consider the whole publication

complained of, for the purpose of determining the meaning of any word or statement therein, and for the purpose of determining whether the said publication, or any part of it, is a libel or not, either in law or in fact.''

''If the jury find from the evidence that, at or about the time of the publication of the article for which this action is brought, four other reputable daily newspapers published in the city of St. Louis published the same statements concerning the plaintiff, in substance or in form, they are at liberty to take that fact into consideration as bearing upon the question whether the publication was malicious or the result of an honest mistake.''

''If the jury find from the evidence that the statements made in the article for which this suit is brought, were found, by a reporter of the *Star-Sayings* newspaper, on the files of the chief of police in the city of St. Louis, in the form of a communication from the superintendent of police of the city of Evansville, Ind., to the chief of police, detailing that statements there made concerning the plaintiff; and if the jury further find from the evidence that the statements thus communicated by the public authorities of Evansville, Ind., to the chief of police of St. Louis, were fairly and faithfully put in writing by said reporter, in the form of the article stated in the plaintiff's petition, and inserted in said *Star-Sayings* newspaper, in good faith and in the *bona fide* belief that they were true, and that said statements were printed and published in said newspaper merely as an item of news, and without any ill will toward the plaintiff—then the jury are at liberty to take these facts into consideration in mitigation or reduction of damages.''

''In the event the jury find that the publication in question was a libel, they are instructed that, in estimating the damages which the plaintiff ought to receive,

it is proper for them to take into consideration, as tending to mitigate or diminish such damages, the following facts, if proven to their satisfaction: 1. The fact that the publication in question was made by the defendant in the *bona fide* belief that it was true. 2. The fact that the publication related to a matter affecting the public rights and the public interests, and was made by the defendant without any ill will toward the plaintiff, but simply as an item of news, believing that the statements therein contained were true, after investigating the truth thereof. 3. The effect of other publications relating to the matter in other newspaper publications in the city of St. Louis—excluding from their estimate of the damages to be awarded in this case any and all damages they may deem to have been caused to the plaintiff in his character or reputation by such other publications, and giving to the fact of such other publications, in abating the damages to be awarded to the plaintiff in this case, such weight as the jury may deem right and just.

"The court instructs the jury that, while the law furnishes no accurate rule or guide to the jury in assessing damages in a case of this kind, yet the plaintiff is not entitled to recover any damages except those which have probably accrued, or which will probably accrue from the injury complained of, and that the jury are not warranted in giving damages based upon remote contingencies which may or may not happen, or upon mere speculation or surmise."

"The court further instructs the jury that there is no rule of law which obliges a jury in any case to give damages by way of punishment to the defendant or example to the public, or to give any damages beyond what may be necessary to compensate the plaintiff for any injury which he may have sustained, but that,

although the state of the pleadings and evidence in this case may, under other instructions of the court, warrant the jury in giving exemplary damages, yet it is nevertheless a matter resting in their sound discretion whether they will do so or not.''

The defendant also requested the court to give the following three instructions:

"The jury are further instructed that, under the constitution of the state of Missouri (it is exclusively for the jury to determine the law of libel; that), upon the question whether the publication for which this action is brought was or was not a libel and consequently is or is not properly the subject of this action for damages, the jurors are the sole judges of the law as well as of the facts (and are not conclusively bound by the instructions given them by the court, though they may properly consider those instructions as guides in determining the issue, and though they are bound by the instructions given by the court, upon all other questions; and), that, before the jury can find a verdict for the plaintiff, they must find that the article published by the defendant, is a libel in point of law.''

"The jury are further instructed that the bill of rights in the constitution of the state of Missouri provides that no law shall be passed impairing the freedom of speech; that every person shall be free to say, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and the jury are instructed that, before they can find a verdict for the plaintiff in this case, they must find that the defendant has been guilty of an abuse of that liberty; and of this the jury are the sole judges (as explained in the last previous instruction).''

"The jury are further instructed that, in determining whether the publication complained of was or was not a libel, and whether the defendant is or is not

liable to pay damages to the plaintiff by reason thereof; and in determining the further question whether, in publishing said matter, the defendant was guilty of an abuse of the liberty of the press guaranteed by the constitution of this state (as explained in the two last previous instructions); and in determining any and all questions of fact presented by the evidence in the case—the jurors are the exclusive judges of the weight to be given to the evidence and of the credibility of the witnesses; and that they should give to each portion of the evidence and to the whole of it taken together, the weight and value to which they think it fairly entitled."

The court refused to give instruction "A" as tendered, but erased the words included in brackets, and as thus modified gave it. And gave instruction "B" after modifying it, by adding the words embraced in brackets; and modified instruction "C" by adding the words included in brackets and gave it in its modified form. The defendant asked ten other instructions, all of which were refused by the court. The first of these refused instructions was as to the form of verdict the jury should return; as blank forms of verdict were furnished the jury, there was no harm done by the refusal of the instruction. The sixth was as to the privileges of a newspaper in the publication of news and undertaking to bring the publication of the article in question, under the head of what is known in law as a privileged communication, or occasion. The seventh is of the same purport. The tenth asked the jury to deduct from plaintiff's damages (if any), the amount he had received from other newspapers for a like publication. The eleventh is the same proposition in a different dress. The fourteenth tells the jury that damages can not be given against an employer for the wrongful acts done by his employee; unless such

wrongful act was previously authorized by the employer. The fifteenth told the jury that they could not give exemplary damages in this case. The sixteenth that exemplary damages could not be given, if the defendant published the article in good faith and through an honest mistake as to the facts. The eighteenth instructed the jury that if no material damages were caused by the publication, the damages should be nominal, for one cent or one dollar. The nineteenth was that if the plaintiff had not sustained damages in a sum greater than one dollar, then exemplary damages could not be given.

The court gave the jury the following blank forms of verdict:

"Frank Arnold, plaintiff (99,862), The Sayings Company.

"We, the jury in the above entitled cause, find the issues therein joined in favor of the plaintiff and assess his compensatory damages at the sum of —— and further assess his exemplary or punitive damages at the sum of ——, making a total of ——.

"——, Foreman."

"Frank Arnold, plaintiff, v. (99, 862) The Sayings Company, defendant. We the jury in the above entitled cause, find the issues therein joined in favor of the defendant.    ——, Foreman."

The first assignment of error is that the court erred in excluding the evidence, that other suits had been brought against other newspapers for publishing libels based on the same subject-matter, and that plaintiff had been compensated therefor by these other publishers. There can be no contribution between tortfeasors. The fact that these other newspapers had settled the damages done by their publications, can not be taken into consideration by the jury in assessing the damages against

No contribution among tortfeasors.

defendant occasioned by its publication. Damages
done to "A" by the tortious act of "B" can not be
offset against damages done to "A" by the separate
tortious act of "C." Odgers on Libel and Slander,
sec. 158; Calburn v. Patmore, 1 Comp. M. & R. 75;
Atkins v. Johnson, 43 Vt. 78; Arnold v. Clifford, 2
Sum. 238. The contention that the published article
is privileged, is not supported by the fact nor by the
law. Smith, the reporter who wrote the article, testi-
fied that he had the postal card and letter from the
Evansville chief of police before him when he wrote
the article. The story he made up was not warranted
by the postal card and letter. He garbled the facts
and added falsehood to the police report, to charge
plaintiff as accessory before the fact, to the commis-
sion of the larceny. Garbled extracts and false reports
of a privileged communication are not protected by
the law under the guise of the freedom of the press.
Thomas v. Croswell, 5 Am. Dec. 269;
PRIVILEGED communications. Cincinnati Gazette Co. v. Timberlake, 78
Am. Dec. 285. The term "freedom of
the press," as was said in Sweeney v. Baker, 13 W.
Va. 158, "consists in a right, in the conductor of a
newspaper, to print what he chooses without any
previous license, but subject to be held responsible
therefor to exactly the same extent that any one else
would be responsible for the publication." The press
possesses no immunity in this regard not possessed by
private individuals. Upton v. Hume, 24 Ore. 420;
Edwards v. St. Joseph Printing Society, 99 Cal. 431;
Palmer v. Concord, 48 N. H. 211; Scheckles v. Jack-
son, 10 Cush. 24, a leading case.' The letter and
postal from the Evansville chief of police were not a
statement of facts developed on a judicial investiga-
tion, nor the statement of a fact resulting from a
judicial investigation, nor were they matters about

which the public had a right to be informed, nor was it information useful to the public, and was not therefore privileged. Such reports are no more privileged than are ordinary street rumors, and to justify their publication, when defamatory, the publisher must show that they are true. State v. Bernheim, 9 N. H. 34; Palmer v. Concord, 48 N. H. 211; Ludwig v. Cramer, 53 Wis. 193; Park v. Detroit Free Press, 72 Mich. 560; McAlister v. Detroit Free Press, 76 Mich. 338; Conroy v. Pittsburg Times, 139 Pa. 334.

Instruction "A" as modified and given by the court is in harmony with the cases of State v. Armstrong, 106 Mo. 395, and Arnold v. Jewett, 125 Mo. 24. The additions made to instructions C. and B. simply notified the jury that these instructions should be read in the light of other instructions.

It was their duty to do this, and we can see no harm in calling their attention to this duty. A correct instruction was given on both compensatory and exemplary damages, and it would have served no good purpose to repeat the instruction, couched in other language, as the court was asked to do by defendant's refused instructions. By refused instruction number 16 the court was asked to instruct the jury that to authorize the finding of exemplary damages, it was necessary that they find the publication was made with express or actual malice. This is not the law in this state in actions for libel; malice with us is malice, and it matters not whether it be actual or that other kind which is inferred from the doing of a wrongful act without justifiable cause or excuse; the jury may upon the proof of either give exemplary damages. Buckley v. Knapp, 48 Mo. 161; Clements v. Maloney, 55 Mo. 359; Callahan v. Ingram, 122 Mo. 355; Ferguson v. The Evening Chronicle Pub. Co., No. 6933 St. Louis Court of Appeals, decided at the present term.

Instruction number 19, in view of the fact that substantial damages were given, is of no importance in this discussion, but the question was decided against the instruction in Ferguson v. The Evening Chronicle Pub. Co., *supra*.

Another contention of appellant is that the appellant is not responsible for the wrongful act of Smith its reporter. Such is not the law; the proprietor of a periodical can not escape upon any such grounds; he is responsible for what appears in his periodical, and can only escape liability by showing that notwithstanding the libelous character of the publication, it is one which he had a right to publish. Rex v. Walter, 3 Esp. 21; Andrews v. Wells, 7 Jonas, 260; Huff v. Bennett, 4 Sand. 120; Townsend on Slander and Libel, sec. 115; Starkie on Slander, sec. 225; Odgers on Libel and Slander, sec. 156. The view of the law as above expressed leads us to approve the action of the court in declining to give the ten refused instructions asked by the defendant.

Appellant complains of the first one of the blank forms of verdicts. Upon what ground or for what reason, we are unable to see; there were two distinct kinds of damages the jury were required to pass on, should they find for the plaintiff, compensatory and exemplary; the verdict left a blank space for the amount of each, should they find both kinds, they were not told to find both kinds, nor did the verdict intimate that they should find both; if they found one kind, it was their duty to pass upon the claim for exemplary damages, and if they should have found none, it would have been their duty to so say by their verdict, by filling in the blank with a nought, or the word nothing. The practice of furnishing jurors with correct forms of verdict on their retirement is a common

*PROPRIETOR of newspaper is responsible for wrongful acts of his reporter.*

practice in the circuit courts, and is to be commended.

Appellant complains that the damages assessed by the jury are excessive. The amount of damages to be assessed in actions of this character is peculiarly within the province of the jury, and in estimating the damages they may take into consideration the character of the defamation, the circumstances under which it was published, the extent of the circulation of the paper, and the publicity thus given to the libel, the absence of any apology, the fact that the publication was a made up story, garbled from a comparatively harmless letter, and the pecuniary circumstances of the defendant, doubtless all these facts were considered by the jury, and in view of them a court would not be justified in pronouncing the damages assessed exorbitant. Perceiving no reversible error in the record, the judgment is affirmed. Judge BOND concurs; Judge BIGGS absent.