Linda A. BEDARD

v.

Abbott O. GREENE

v.

Charles PETERSON, Jr., et al.

Supreme Judicial Court of Maine.

Dec. 31, 1979.

Markos & Roy, James L. Markos, Jr. (orally), Ellsworth, for Linda A. Bedard.

Anderson & Norton, Peter Adams Anderson (orally), Bangor, for Abbott O. Greene.

Frederick B. Stocking (orally), Gerald A. Smith, Machias, for Charles Peterson.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

McKUSICK, Chief Justice.

Promptly after filing his answer in this slander action, defendant Abbott Greene

filed a third-party complaint asserting a right of contribution against two persons who had successively repeated to others the defamatory statement allegedly made by Greene. Under Rule 12(b)(6), M.R.Civ.P., the Superior Court without elaboration dismissed defendant Greene's third-party complaint. Since Greene is charged with having intentionally published a slander and since we adhere to the universal common law rule that contribution is not available to an intentional tortfeasor, we deny Greene's appeal.

Plaintiff Linda Bedard, a teacher's aide in the Harrington and Columbia Falls schools, brought the principal action seeking to recover damages on account of certain slanderous statements Greene allegedly made about her at a meeting of the directors of School Administrative District No. 37. Greene answered plaintiff's complaint and filed a third-party complaint against third-party defendants Charles Peterson, Jr., and Richard N. Bedard (plaintiff's husband), appellees herein. Greene's third-party complaint alleged that the "statements made by [Greene] were heard by [third-party] Defendant, Charles Peterson, Jr. and broadcast to the general public by [Peterson]" and that "[third-party] Defendant, Richard N. Bedard, learned of such statements from [Peterson] and further published and broadcast said statements to the general public." Although the pleadings are not completely clear and third-party plaintiff Greene has made several alternative claims at earlier stages of the proceedings, he now relies exclusively upon an alleged right of contribution as the basis of his third-party complaint. Greene apparently assumes, as will we for the purposes of this decision, that if he were found liable to Mrs. Bedard for damages in slander, those damages might well reflect the consequences of repetition of the slander. *See*

*Davis v. Starrett,* 97 Me. 568, 576, 55 A. 516, 519 (1903).

The third-party defendants moved to dismiss the third-party complaint for failure to state a claim upon which relief can be granted. The Superior Court granted appellees' motion to dismiss and, upon finding "no just reason for delay," *see* M.R.Civ.P. 54(b), ordered the entry of final judgment on the third-party claim. Greene seasonably appealed to this court.

■ Rule 14(a), M.R.Civ.P., permits a defendant in a civil action to implead, by filing a third-party complaint, "a person not a party to the action who is or may be liable to such third-party plaintiff for all or part of the plaintiff's claim against him." If third-party plaintiff Greene can establish a right of contribution from third-party defendants, then Rule 14(a) impleader is proper. *Bedell v. Reagan,* 159 Me. 292, 192 A.2d 24 (1963). *See* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 14.1 (2d ed. 1970).

■ Our cases have consistently held that the right of contribution in tort depends on the nature of the tortious conduct for which liability is imposed. Contribution is denied in cases of intentional wrong and is permitted only where liability is imposed for conduct that is not morally blameworthy.[1] *Scammon v. City of Saco,* Me., 247 A.2d 108 (1968); *Bedell v. Reagan, supra; Hobbs v. Hurley,* 117 Me. 449, 104 A. 815 (1918).

The general rule denying contribution to intentional tortfeasors originated with the English case of *Merryweather v. Nixan,* 8 Term Rep. 186, 101 Eng.Rep. 1337 (1799). *See* Prosser, *Law of Torts* § 50, at 305 (4th ed. 1971). In Maine, *Hobbs v. Hurley, supra,* first declared the rule, stating that:

The reason of the rule is that the law will not lend its aid to him who founds his

---

1. Since as we here hold there is no right of contribution among intentional tortfeasors, we have no occasion to reach, and therefore we do not decide, whether contribution would be available as to damages negligently caused by *consecutive* conduct, rather than *concurrent* conduct. *Cf. Restatement (Second) of Torts* §§ 879, 886A(1) (contribution among negligent

tortfeasors, each of whose conduct "is a legal cause of harm that cannot be apportioned, . . . irrespective of whether their conduct is concurring or consecutive); Annot., "Right of Tortfeasor Initially Causing Injury to Recover Indemnity or Contribution from Medical Attendant Causing New Injury or Aggravating Injury in Course of Treatment," 8 A.L.R.3d 639 (1966).

cause of action upon an immoral or illegal act. It leaves him where it finds him. *Id.* at 451, 104 A. at 816. Other cases have suggested a somewhat related rationale, that the deterrent effect of tort liability would be weakened by allowing intentional wrongdoers to spread their liability to others. As the Supreme Court of Tennessee stated in *Rhea v. White,* 40 Tenn. (3 Head) 121, 122 (1859), where the liability arises *ex delicto,* contribution must be denied wrongdoers so "that they may be intimidated from committing the wrong, by the danger of being made responsible for all the consequences."

At the same time this court adopted the rule of *Merryweather v. Nixan,* it also embraced the primary exception to that rule, holding that contribution is allowed "when the parties are not intentional and wilful wrongdoers, . . . [when they are] unintentional tort-feasors, so to speak." *Hobbs v. Hurley, supra,* 117 Me. at 451, 104 A. at 816. The purpose of the exception is to avoid the unjust results that might follow from rigid application of the noncontribution rule. "The rule ceases because the reason for it has ceased." The twin rationales—the "clean hands" notion and the deterrence goal—are either irrelevant or much attenuated where the party held liable is merely negligent or otherwise free from moral blameworthiness. Thus, in *Hobbs v. Hurley* itself, contribution was allowed between partners in a joint venture, both of whom had only vicarious liability for the negligence of their servant.

Later cases extended or modified the *Hobbs v. Hurley* exception to avoid similarly unjust results. In 1963 *Bedell v. Reagan, supra,* applying a well-considered dictum in *Hobbs v. Hurley, supra* at 452, 104 A. at 817, first held in Maine that a right of contribution exists between negligent joint tortfeasors in an automobile accident case.[2] In *Packard v. Whitten,* Me., 274 A.2d 169 (1971), this court modified the formula for determining contributive shares in light of the recently enacted comparative negligence statute so as to reflect the relative degree of fault of each contributor. *See generally Roberts v. American Chain & Cable Co.,* Me., 259 A.2d 43 (1969).

Turning to the pleadings in the case at bar, the slander action against appellant Greene is unquestionably based on his intentional publication[3] to third persons of statements defamatory of Mrs. Bedard. Although it is possible that in rare fact circumstances liability for slander might be imposed for a negligent publication,[4] plaintiff's complaint against Greene alleges an intentional communication, that is, an intentional tort. Nevertheless, appellant asks us to reconsider the general rule of *Hobbs v. Hurley* and to extend its exception—in effect, to swallow that rule—by allowing contribution in this case. We see no injustice in the result and decline the invitation to break with precedent.

Wherever courts have judicially declared an exception to the no-contribution rule, they have universally limited that exception to nonintentional torts.[5] *See* Prosser, *supra*

---

2. Two federal judges divining Maine law under the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), had accurately predicted that the *Hobbs v. Hurley* exception would be extended to allow contribution among negligent tortfeasors. *Reed v. Stone,* 176 F.Supp. 463 (D.Me.1959) (Gignoux, J.); *Campbell v. Maine Central Transp. Co.,* 20 F.R.D. 629 (D.Me.1957) (Aldrich, J.).

3. Intention becomes a critical element of the tort of slander only as to the act of publication or communication. One who intentionally publishes defamatory matter to a person other than the plaintiff "is held strictly responsible for innocent conduct, without proof that he intended the consequences or was at all negli-

gent with respect to them." Prosser, *supra* § 113, at 771.

4. *See id.* at 774–76; *Restatement (Second) of Torts* § 577(1), Comment k, Illustration 4 (1979) (creation of "an unreasonable risk that the defamatory matter will be communicated to a third person").

5. In *Atkins v. Johnson,* 43 Vt. 78 (1870), the publisher of a libelous newspaper article was denied indemnity from the author of the article after he, the publisher, had satisfied the full judgment. The author had contracted with the publisher that the author "would defend and save harmless the [publisher] from all damage and harm that might accrue to the [publisher]

§ 50, at 306–07. The recently published *Restatement (Second) of Torts* § 886A(3) (1979) provides: "There is no right of contribution in favor of any tortfeasor who has intentionally caused the harm."

About half of the states have abrogated the no-contribution rule by statute, but in doing so, the clear majority have preserved the *Hobbs v. Hurley* distinction. *See* Prosser, *supra* § 50, at 307–08. Although the 1939 Uniform Contribution Among Tortfeasors Act, 9 U.L.A. 233 (1957), was silent on the matter, section 1(c) of the 1955 Revised Act, 9 U.L.A. 127 (Supp.1967), provides: "There is no right of contribution in favor of any tortfeasor who has intentionally [willfully or wantonly] caused or contributed to the injury . . . ." (The bracketed language in the original was optional for states that distinguish among degrees of negligent conduct.) We see no reason to disagree with the policy judgments that are reflected in these judicial and legislative decisions.

Under her complaint, any judgment recovered by Mrs. Bedard against defendant Greene would be based upon his intentional publication of defamatory matter. Thus adjudged an intentional tortfeasor, he could not shift through contribution any part of that judgment to others. The Superior Court correctly dismissed his third-party complaint.

The entry must be:

Appeal denied.

Judgment affirmed.

POMEROY and ARCHIBALD, JJ., did not sit.

in consequence of publishing said article." *Id.* at 80. Recovery was denied on the basis of the rule against contribution or indemnity "as between joint wrong-doers," which the court characterized as a "general principle . . . too well settled to require either argument or authority." *Id.*