STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-06-044
6AB -YOR- 2/7/2007

CHARLES J. HOUSMAN, as Trustee
of the Pine Banks Nominee Trust,

and

WALLACE CAPITAL, LLC,

Plaintiffs

v.

ROBERTA A. GOLDEN,

Third Party Plaintiff/Defendant

v.

ROCKMERE LODGE, ANDREW F.
ANTONIUK, ROBERT BROWN and
DOUGLAS FLINT,

Third Party Defendants

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

MAY 16 2007

This matter comes before the Court on Plaintiffs' motion to strike second affidavit; Plaintiffs' motion for summary judgment; and third party Defendants' motion to dismiss.

## FACTUAL BACKGROUND

Plaintiff Charles Housman ("the Trustee") is the Trustee of Pine Banks Nominee Trust ("the Trust"), which was organized under Massachusetts law in February 1990. Defendant Roberta A. Golden ("Golden") is a Massachusetts resident who owns property at 38 Stearns Road in Ogunquit, Maine. Plaintiff Wallace Capital, LLC ("Wallace") is a Massachusetts corporation, which is a party in interest as holder of a January 2006 mortgage on the Ogunquit property in the amount of $600,000.

On November 24, 2004, Golden signed a promissory note in favor of the Trust for a construction loan in the amount of $1,050,000. Under the note, interest only payments would begin in June 2005, with the entire balance due before November 29, 2005. Golden states that she intended to build a home on the property after demolishing a cottage on her lot, noting that, through several different entities, she has owned the Ogunquit property since 1987. Also, she claims that the parties' understanding and accepted practice was that interest would be paid out of the loan balance as construction progressed, but there were some difficulties with the construction because neighboring landowners contested her building permit. Golden contends that the owners of the neighboring Rockmere Lodge, Andrew Antoniuk, Robert Brown, and Douglas Flint (collectively "third-party Defendants") challenged her building permit before the Town and then appealed that decision to this Court, impeding development.[1]

The Trustee alleges that Golden is in default, having failed to make payments as required by the note. As of April 2006, the alleged amount of default under the 2004 note is $816, 227 (principal), $19,045.30 (interest), $4,151.13 (late fees), and $6,801.90 (default fees), to include an unspecified amount of legal fees and costs. The Trust notified Golden of the default in a March 15, 2006 letter. Additionally, Wallace alleges that Golden also defaulted on its note, which had called for interest payments beginning in March 2006, with the full balance and interest due before September 17, 2006. The alleged amount of default under the Wallace mortgage is $178,875 (principal), $5,366.25 (interest), $115.52 (late fees), and $1,490.63 (default fees), plus legal fees and costs.

---

[1] Separate litigation between Golden and the Third-Party Defendants regarding an easement continues today, as an appeal from the decision in Docket No. CV-05-047.

The Trust and Wallace filed a foreclosure complaint against Golden on March 23, 2006. The complaint seeks foreclosure of the Trust's mortgage, as well as Wallace's mortgage, per 14 M.R.S. § 6321 et seq. (2005), and also asks this Court to determine the amount of default and order that Golden be held liable for any deficiency after a foreclosure sale. Golden denies that she is in breach and raises numerous affirmative defenses, including waiver, lack of standing, laches, the statute of limitations, failure to state a claim upon which relief can be granted, and fraud and misrepresentation on the part of the Plaintiffs, among other defenses. She also brings a third-party complaint against third-party Defendants for tortious interference with contractual relations, defamation, intentional infliction of emotional distress, trespass, slander of title, and violation of 5 M.R.S. § 207. Third-party Defendants argue that they were not parties to the mortgage and therefore may not be held liable for any judgment that might issue against Golden.

## DISCUSSION

### 1. Motion to Strike Affidavit.

Plaintiffs have moved to strike a second affidavit filed by Golden. Golden initially filed an affidavit to accompany her opposition to summary judgment. Plaintiffs challenged the affidavit because it allegedly did not contain the proper language and jurat required by Rule 56. M.R. Civ. P. 56(e) requires that affidavits in the context of summary judgment be based on personal knowledge, contain admissible facts, and demonstrate the affiant's competency. To ensure that her affidavit would not be stricken, Golden filed a second, notarized affidavit. The addition of the notary's signature was the only alteration. Plaintiffs now move to strike the notarized affidavit because they contend that Golden is not entitled to re-file her affidavit. Their motion to strike is denied because Rule 56(e) gives the Court discretion to allow further affidavits

3

to be filed, and no prejudice to Plaintiffs would result if the second affidavit is considered.

    2.    <u>Summary Judgment Motion</u>.

Summary judgment is proper where there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. When assessing a summary judgment motion, this Court compares the parties' statements of material fact and record references to decide whether a genuine issue of material fact has been generated. *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 8, 742 A.2d 933, 938.

When deciding whether to order judgment on a foreclosure complaint, this Court addresses whether the mortgage has been breached, the amount due as a result, and the order of priority of lienholders. *Abbott v. LaCourse*, 2005 ME 103, ¶ 9, 882 A.2d 253, 255. In *Abbott*, the Law Court reversed the trial court's grant of summary judgment in the foreclosure action because the parties' contradictory affidavits revealed a material factual dispute about whether the note had been repaid. *Id.* ¶ 10, 882 A.2d at 255.

The admissibility of extrinsic evidence regarding the parties' agreements about construction draws is also an issue in this case. The parol evidence rule prevents the court from considering "extrinsic evidence offered to alter or vary unambiguous contractual language." *Rogers v. Jackson*, 2002 ME 140, ¶ 9, 804 A.2d 379, 381. This rule, however, is based on the assumption that the contract between the parties is integrated. *Id.* In *Rogers*, the Law Court determined that summary judgment was improper

4

because, viewing the non-moving party's allegations most favorably, the contract was not integrated. *Id.* The Court explained that when contracting parties also have an oral agreement that performance will be conditioned upon the occurrence of some other event, "the agreement is not integrated with respect to the oral condition." *Id.* (citations omitted).

Here, Plaintiffs argue that the note securing the mortgage represents the parties' complete agreement regarding Golden's payment obligations. Because she did not make payments as required, they contend, she is in default and they are entitled to foreclosure as a matter of law. Plaintiffs argue that there are no disputed material facts because the documents speak for themselves.

This is not a simple residential mortgage, however; it is a commercial loan accompanied by a construction holdback agreement that by its terms depends on the happening of certain conditions. Golden has raised several disputed issues of material fact, most notably the parties' understanding as to the timing and method of making interest payments, which is germane to whether she defaulted on the loan. She contends that the parties agreed that interest could be deducted from the unused portion of the loan, and when that was exhausted, it could come from the second mortgage with Wallace. At oral argument, Plaintiffs admitted that there was an escrow with the first loan from which payments could be drawn, but they contend that once that money was exhausted, Golden would still be responsible for making payments in another way. This is a factual dispute that is relevant to the issue of default.

Golden further argues that the Trust waived portions of the holdback agreement by actually deducting those interest payments from the unused balance, which she contends became an "established pattern and practice," as it had been in prior transactions with the same lenders. Golden claims that payments on the first loan were

5

current as of March 1, 2006, and that after that time, interest should have been withdrawn from the balance of the Wallace loan. Instead, she received a notice of default fifteen days later.

There is no dispute that payments were not made; the dispute revolves around whether Golden was obligated to make the payments based on the parties' understanding, and based on Plaintiffs' refusal to make a disbursement. They claim that they could not disburse construction funds because the loan was in default, but Golden contends that their refusal to allow the construction draw entitled her not to pay until disbursement occurred. She also disputes the amount that Plaintiffs claim was due, which is also a material fact. Lastly, Golden cites insurance issues and a five-month construction delay due to litigation with her neighbors as factors that affected payment, because the agreement called for installment disbursements based on construction progress. She contends that the other litigation disrupted construction progress.

Underlying all of these arguments is the central issue of integration. Viewing the matter in the light most favorable to Golden, she has alleged facts that, if true, tend to show some oral agreement about construction draws outside of the otherwise clear terms of the note and mortgage, like the alleged oral agreement in *Rogers*. Because these inherently factual issues are contested, preventing this Court from determining whether a breach occurred and if so, the amount due Plaintiffs, summary judgment on the foreclosure complaint is denied.

3. Third-Party Defendants' Motion to Dismiss.

The Third-Party Defendants' Motion to Dismiss is Granted, without prejudice to these claims being brought in a separate action. *Bedard v. Green*, 409 A.2d 676 (Me. 1979).

6

The entry will be as follows:

Plaintiffs' Motion to Strike Affidavit and for Summary Judgment is Denied.

Third-Party Defendants' Motion to Dismiss is Granted, without prejudice.

Dated:        February 7 , 2007

G. Arthur Brennan
Justice, Superior Court

Alan E. Shepard, Esq. — PLS
Roberta A. Golden (PRO SE) — DEF
Susan Driscoll, Esq. — T/P DEFENDANTS

7