*721 OPINION OF THE COURT
Herbert Kramer, J.*
This court holds that a license to fire at will does not carry with it permission to poison with immunity.
Petitioner, Rodney Wright, commenced this CPLR article 78 proceeding, seeking reinstatement to his position, back pay, and other related relief.
Wright’s former employer, respondent Heartshare Human Services of New York (Heartshare), spelled incorrectly in the caption, and its officer, respondent William Guarinello, have filed a verified answer. The Attorney-General of the State of New York, representing the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD), and its Commissioner, Thomas Mul, have moved for dismissal as to them, contending that they are not proper parties to this proceeding. The relevant facts follow.
Heartshare is a not-for-profit corporation. It is a social service agency, providing foster care, adoption, family and residential services for individuals with developmental disabilities.
On October 20, 1990, following a background check, Rodney Wright was hired as a Direct Care Worker, and Heartshare assigned him to a facility in Brooklyn. In his position, Wright was responsible for helping developmentally disabled individuals with daily living activities such as doing laundry, and by taking them on trips.
On August 5, 1994, Wright received a letter from Heart-share on the stationery of respondent William Guarinello, its Executive Vice-President. The letter terminated Wright’s employment for "misconduct”, retroactive to July 29, 1994.
The misconduct of which Wright was accused was for the infliction of both physical and psychological abuse upon a patient with developmental disabilities who, for purposes of this opinion, shall be identified as "G.H.” Wright was accused of hitting G.H. in the ear, causing his eardrum to puncture, requiring emergency medical attention. The psychological *722 abuse also consisted of a belated charge that Wright, without proper authorization, caused G.H. to face a wall.
Wright denies both charges and alleges that immediately after G.H. sustained the injuries, on two occasions, G.H. identified four attackers, none of whom were the petitioner. Wright further alleges that G.H., who is developmentally disabled and highly vulnerable to being manipulated, was coached into identifying him as one of those who engaged in the physical assault. Several corroborating witnesses have submitted affidavits discussing a co-worker’s private coaching of G.H.
Insofar as the petitioner seeks reinstatement to his position and back pay, those requests are denied. Commencing with the Court of Appeals decision in Martin v New York Life Ins. Co. (148 NY 117, 121), 100 years ago, New York has adhered to the "at will” doctrine, entitling an employer to terminate the services of an at-will employee "at any time.” The right to terminate an employment remains unimpaired absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in an employment contract (see, Sabetay v Sterling Drug, 69 NY2d 329, 337; Murphy v American Home Prods. Corp., 58 NY2d 293, 305; Weiner v McGrawHill, Inc., 57 NY2d 458), none of which has been demonstrated herein. The first page of Heartshare’s Human Resource Policy Handbook, in effect in April 1992, states: "This Handbook should not be considered a guarantee or promise of employment or a written or implied contract concerning employment. This means that there is 'employment at will’ at all times during your employment.”
This determination does not end the court’s inquiry into what relief may be afforded. Where the reason for the petitioner’s dismissal is of a stigmatizing nature, he is entitled to a due process name-clearing hearing (Matter of Gray v Director, Bronx Dev. Servs., 62 NY2d 729, 730), provided there has already been a public disclosure or dissemination of this reason by his employer, thereby foreclosing his freedom to take advantage of other employment opportunities (Matter of Lentlie v Egan, 61 NY2d 874, 876).
The court finds, in this case, that a charge of patient abuse is of a stigmatizing nature and, further, that the charge has been publicly disclosed in a report naming Wright as an abuser, made by Heartshare to State authorities. In addition, Rodney Wright and his counsel have, in proper evidentiary *723 form, submitted proof that Wright’s future employability may be adversely affected by the stigmatizing reason for his discharge because of patient abuse. Wright has a pending application for a position with the Federal Government and is being reviewed for employment with the Secret Service. A discharge predicated on psychological and physical abuse of a patient with a developmental disability may result in summary rejection of Wright’s candidacy for any meaningful employment by any right-minded and sensitive individual, let alone the Secret Service, which would require individuals with unquestioned adherence to high standards of character and integrity. The court also takes note that in the application required by all prospective candidates for Federal employment (Form No. SF-171), the applicant is required, under the pains of penalty, to describe in detail the circumstances of any firing or forced resignation within the past 10 years.
To many individuals, dishonesty in completing a job application is not a viable or suitable choice. If Wright were to honestly disclose, under the doctrine of compelled self-publicatian, the reason for his termination of misconduct as predicated on patient abuse, his chances of being employed by the Federal Government, let alone the Secret Service, are doomed. Indeed, his chances for continued employment in the social services field by any private or governmental employer are destroyed, and not many private employers in unrelated fields would want to offer Wright meaningful employment.
The doctrine of defamation by compelled self-publication is discussed in a recent, excellent law review article (Siegel, Self-Publication: Defamation Within The Employment Context, 26 St Mary’s LJ 1 [1994]), and its recognition in New York has been forecast in several thoughtful opinions (see, Weldy v Piedmont Airlines, 1989 WL 158342, 4 Indiv Empl Rts Cas [BNA] 1846 [1989]; 1991 WL 5147 [WD NY, Jan. 15, 1991] [the District Court in two orders predicted recognition coupled with availability of punitive damages], affd on other grounds 985 F2d 57 [2d Cir 1993]; Mandelblatt v Perelman, 683 F Supp 379 [SD NY 1988]; Metchick v Bidermann Indus. Corp., 1993 WL 106139, 8 Indiv Empl Rts Cas [BNA] 1204 [SD NY 1993]; Elmore v Shell Oil Co., 733 F Supp 544 [ED NY 1988]; but see contra, Wieder v Chemical Bank, 202 AD2d 168 [as disclosed by the record on appeal, defendant bank, which had publicly billed itself as "the most sports-oriented bank in the world” and the sponsor of the prominent New York Marathon and Corporate Challenge footraces, in hypocritical fashion fired a *724 lawyer in its legal department for "the outside employment” of past teaching of aerobics of which the bank had actually approved. Although defendant bank deliberately designed the discharge of the plaintiff lawyer as based on the stated and unexplained charge of "misconduct” to cause the plaintiff lawyer maximum embarrassment, economic hardship, and professional unemployment, the court refused to discuss the merits of its prior rejection of the doctrine of compelled self-publication]; Weintraub v Phillips, Nizer, Benjamin, Krim & Ballon, 172 AD2d 254, affg unreported decision of the IAS Court, index No. 26931/87, Sup Ct, NY County, Jan. 30, 1990, entered Mar. 16, 1990] [facts disclosed insubordinate behavior by plaintiff and not a case of compelled self-publication as alleged by plaintiff; court, nevertheless, rejected the doctrine]).
Lying on a job application is also not a viable approach, certainly not under the facts of this case. Even if an otherwise vigilant Secret Service were to slumber and not detect any supposed material concealment, by State law and regulation Heartshare, as a provider of residential services to developmentally disabled individuals, is required to report all incidents of abuse.
The regulations covering reportable incidents and client abuse are contained in 14 NYCRR part 624. Acts of physical or psychological abuse, or unauthorized uses of "time-out,” including the use of the technique for the convenience of staff as a substitute for programming or punishment purposes must be reported to the State’s OMRDD on official forms (see, 14 NYCRR 624.4 [a], [b] [1], [3], [7]; 624.5).
The importance of the reporting requirement of patient abuse is contained in several other State laws (see, e.g., Mental Hygiene Law § 7.21; Public Health Law §§ 2803, 2803-d). Such a report naming Rodney Wright as an abuser was, in fact, made by Heartshare to State authorities and is not directly controverted in the opposing papers.
In short, if Wright, in seeking employment, were to reveal the grounds for his discharge based upon "misconduct”, he would be summarily rejected from serious consideration by prospective employers. If he were to overcome the natural cultural aversion to lying and were to conceal the defamatory grounds, he would be detected since his name is in a State-required and State-maintained report of abusers.
This court thus orders that a name-clearing hearing be held by the OMRDD regarding the charges of patient abuse leveled *725 at Wright predicated on both the disclosure by Heartshare to the State that Wright is an abuser and also upon the duty that Wright will forever encounter to honestly reveal to prospective employers the grounds for termination as stated by Heartshare.
Nothing in the 100-year history of "at will” employment permits an employer to go beyond the boundary of ending one employment by inventing a knowingly false charge that it can foresee will foreclose any future employability, where the circumstances bespeak a strong compulsion by the employee to self-publish the stated grounds. A license to fire at will does not carry with it permission to poison with immunity.
As Chief Judge Benjamin N. Cardozo, in People ex rel. Karlin v Culkin (248 NY 465, 478), stated: "Reputation * * * is a plant of tender growth, and its bloom, once lost, is not easily restored.”
Accordingly, the petition for relief under CPLR article 78 is granted only to the extent that OMRDD shall conduct a due process name-clearing hearing, permitting the petitioner full representation by his designated counsel; the petition is denied in all other respects. In connection with the name-clearing hearing, respondents Heartshare, Guarinello, and OMRDD shall produce to plaintiffs counsel, not later than 30 days after the date of this decision, copies of all documents, transcripts, audio- and/or videotapes, notes, and any other material regarding the investigation conducted by Heartshare as to the charges of abuse made against Wright, all statements and interviews given, and all materials in G.H.’s file revealing his ability to make an identification and his susceptibility to improper suggestion, including, but not limited to, G.H.’s scores on the Wechsler Adult Intelligence Scale.
The motion by the Office of the Attorney-General to dismiss is denied.

 This opinion is being amended on this court’s own motion to delete certain portions of its original decision which may be perceived negatively as to a cited defendant. This court has received certain letters which urged the withdrawal of the opinion. The path is highly unethical when based on any third-party request, no matter how well intentioned. However, this court feels that the cited party is entitled to have removed any perceived negatives to its name.