**Michael D. CAREY and Janet Carey, Plaintiffs,**

v.

**MT. DESERT ISLAND HOSPITAL and, Mt. Desert Island Regional Health Care Corporation, Defendants.**

Civ. No. 95–CV–167.

United States District Court, D. Maine.

Dec. 21, 1995.

Sumner H. Lipman, Lipman & Katz, Augusta, Maine, for Plaintiffs.

Angela M. Farrell, Mitchell & Stearns, Bangor, Maine, A. James Johnston, Post & Schell, P.C., Philadelphia, PA, for Defendants.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff, Michael D. Carey, worked at Mt. Desert Island Hospital ("MDI") from December 1983 until his termination on June 23, 1994. He now sues MDI, and Mt. Desert Island Regional Health Care Corporation ("MDI–RHC"). Carey filed a six count complaint alleging sexual discrimination, disparate treatment, and sexual harassment under Title VII and the Maine Human Rights Act (Counts I and II), retaliatory discharge under the Maine Human Rights Act ("MHRA") and the Civil Rights Act of 1964 (Count III), defamation (Count IV), loss of consortium (Count V) (by Janet Carey, Plaintiff's wife), and punitive damages (Count VI).

Defendants move to dismiss for failure to state a cognizable claim. Fed.R.Civ.P. 12(b)(6). The Court grants the Motion in part, and denies it in part.

### I. Motion to Dismiss

A motion to dismiss is designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). The Court accepts all well-pleaded facts as true, "indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir.1992). The plaintiff, however, must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). The Court need not accept "bald assertions" or "unsubstantiated conclusions." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990). "[I]f the facts narrated by the plaintiff 'do not at least outline or adumbrate' a viable claim, [the] complaint cannot pass Rule 12(b)(6) muster." *Gooley*, 851 F.2d at 515 (quoting *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984)).

### II. Background

MDI is a non-profit health care corporation organized under the laws of Maine. MDI–RHC is a wholly owned subsidiary of MDI. Both entities maintain their principal place of business in Bar Harbor, Maine, and together the hospital and its subsidiary employ approximately 260 people.

Michael D. Carey served in various capacities at MDI over the ten year period from 1983 to 1994. Carey served as MDI's Chief Financial Officer at the time of his termination on June 23, 1994. He claims his duties related to both MDI and MDI–RHC.

Carey alleges that MDI treated him differently and ultimately fired him, at least in part, due to his gender. He also contends that his sexual harassment complaints contributed to MDI's decision to fire him. Carey cites the following examples to support his claims: (1) his exclusion from the search for a new Chief Executive Officer of MDI, (2) MDI's actions to discourage him from applying for the Chief Executive Officer position himself, and (3) his removal, without cause, from the Women's Health Center Steering Committee. According to the complaint, Carey's termination came absent prior "progressive discipline," as required by MDI's policy manual.

Carey asserts that he was sexually harassed at MDI, through offensive remarks, and that he reported this to his superiors. On August 10, 1992, for example, Carey sent a written complaint outlining these offensive remarks to James Morrock, MDI's then CEO, and Penny Evans. Later, Carey filed an in-house complaint after his termination, but he was denied a hearing because he refused to appear without counsel. In July

of 1994, Carey filed a Complaint with both the Maine Human Rights Commission and the Equal Employment Opportunity Commission, neither of whom took action. In May of 1995, both agencies sent Carey a Notice of Right to Sue.

Carey sought other employment after his dismissal at MDI, and contends that in the process of seeking employment he was forced to explain the reasons for his termination at MDI. In so doing Carey contends that he was forced to repeat, and in effect, publish defamatory statements made by MDI. These statements form the basis of Carey's defamation count and the derivative loss of consortium claim. Michael Carey was married to Janet Carey on the date of his termination.

### III. Discussion

Defendant MDI moves to dismiss Counts IV, V, and VI for failure to state a claim. Fed.R.Civ.P. 12(b)(6). MDI–RHC moves for dismissal of all claims against it on the same rationale.

### A. Claims against MDI–RHC

■ MDI–RHC claims that Carey fails to implicate it in any of the alleged wrongdoing, and thus moves to dismiss. MDI–RHC notes that the complaint makes only two explicit references to the corporation; in the caption, and later in the description of the parties (Compl. ¶ 5). While technically correct, it is unclear at this juncture the exact relationship between MDI and MDI–RHC. Plaintiff treats the two entities as one throughout the complaint, continually referring to the "Defendant" and never distinguishing between MDI and MDI–RHC.

Defendants' citation to *Kadar Corp. v. Milbury*, 549 F.2d 230 (1st Cir.1977), is unpersuasive. In *Kadar* the Court dismissed counts against various defendants who were named only in the caption and never tied to the alleged misconduct. *Id.* at 233. To the extent that Carey considers MDI and MDI–RHC a single defendant, his allegations are imputed to both entities, thus establishing the potential for liability against both.

Plaintiff has the right to further explore the relationship between MDI and MDI–

RHC through discovery. However, to the extent that information surfaces that relieves MDI–RHC from responsibility in this lawsuit, the Court will revisit this issue if appropriately raised. The Court denies Defendants' Motion to Dismiss as it relates to MDI–RHC at this stage of the proceedings.

### B. Defamation and Derivative Loss of Consortium Claim

Count IV sounds in defamation, and Count V is a derivative claim by Janet Carey for loss of consortium based on the defamation count. Defendants move first to dismiss the defamation count, and to the extent they succeed, Defendants contend that the derivative loss of consortium count must be dismissed as well.

#### 1. Doctrine of Compelled Self–Publication

Carey's defamation claim stems from his termination, allegedly based on false and discriminatory grounds, and the fact that "he has been forced to explain to potential future employers and other third parties the reason for his termination." (Compl. at ¶¶ 31–33). Carey argues that "the doctrine of compelled self-publication permits one to recover for defamation when they are forced to repeat a defamation, and the defendant knew or should have known that the publication would be repeated." (Resp.Br., 4).

■ In Maine, a cause of action for common law defamation requires a showing of:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Lester v. Powers*, 596 A.2d 65, 69 (Me.1991) (citing *Restatement (Second) of Torts*, § 558 (1977)). Defendants argue that the defamation claim must fail because the Plaintiff does not establish either negligence, or proper

publication. Plaintiff replies that the negligence at issue is imputed to MDI, and that publication is satisfied under the compelled self-publication doctrine.

■ Maine has not explicitly addressed the issue of defamation by compelled self-publication.[1] The task thus falls upon this Court to predict how Maine's highest court would resolve this issue. *Moores v. Greenberg*, 834 F.2d 1105, 1107 (1st Cir.1987). *See also Nature Conservancy v. Machipongo Club*, 579 F.2d 873, 875 (4th Cir.), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 724, 58 L.Ed.2d 706 (1978). "Absent controlling state court precedent, a federal court sitting in diversity may certify a state law issue to the state's highest court, or undertake its prediction, 'when the [route] [the] state courts would take is reasonably clear.'" *Lyons v. National Car Rental Systems, Inc.*, 30 F.3d 240, 245 (1st Cir.1994) (quoting *VanHaaren v. State Farm Mut. Auto Ins. Co.*, 989 F.2d 1, 3 (1st Cir.1993)). The Court is satisfied that the existing case law in Maine and other states, provides a sufficient basis from which this Court can predict how the Maine Supreme Judicial Court would address this issue.

A growing number of jurisdictions recognize the theory of compelled self-publication. *See McKinney v. County of Santa Clara*, 110 Cal.App.3d 787, 797–798, 168 Cal.Rptr. 89 (1st Dist.1980); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1343–45 (Colo.1988); *Colonial Stores, Inc. v. Barrett*, 73 Ga.App. 839, 38 S.E.2d 306, 307–08 (1946); *Grist v. Upjohn Company*, 16 Mich.App. 452, 168 N.W.2d 389, 405–06 (1969); *Lewis v. Equitable Life Assur. Soc.*, 389 N.W.2d 876, 886–88 (Minn.1986).[2] These cases generally arise in employment disputes where the originator of the defamatory statement has reason to believe that the defamed person will be under strong compulsion to disclose the contents of the defamatory statement to a third person. *McKinney*, 110 Cal.App.3d at 796–98, 168 Cal.Rptr. 89. These courts ground compelled self-publication in the notion of foreseeability. *Id.* Specifically courts inquire as to whether the employer-defendant knew or could have foreseen that the plaintiff would be compelled to repeat the defamatory statement. *Id.*; *Churchey*, 759 P.2d at 1344–45.

■ Self-publication by its very nature conflicts with the long standing rule against imposing liability for the voluntary republication of actionable statements by the plaintiff. *See* Andrew M. Horton and Peggy L. McGehee, *Maine Civil Remedies* § 20.7 (Rev.ed. 1992); 50 Am.Jur.2d *Libel and Slander*, § 150–151 (1970). The rule against voluntary self-publication effectively dissolves any financial incentive the plaintiff might have to

---

1. Compelled self-publication is an issue of first impression in Maine. However, in an unpublished opinion, now Chief Judge Gene Carter affirmed the recommended decision of Magistrate Edward Keith recognizing the theory of self-compelled publication. *Cormier v. B.P. Oil, Inc.*, Civ. No. 86–0224–B, 14 (D.Me.1988) (Magistrate Keith concluded that the Maine Supreme Judicial Court would "find liability for the results of a repetition by the defamed person where he was compelled to repeat it and where such compulsion to repeat the defamation was reasonably foreseeable at the time of the original communication of the libel to him....").

Numerous other jurisdictions have addressed this issue with mixed results. *See McKinney v. County of Santa Clara*, 110 Cal.App.3d. 787, 797–98, 168 Cal.Rptr. 89 (1st Dist.1980) (recognizing doctrine of compelled self-publication); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1343–45 (Colo.1988) (same); *Colonial Stores, Inc. v. Barrett*, 73 Ga.App. 839, 38 S.E.2d 306, 307–08 (1946) (same); *Belcher v. Little*, 315 N.W.2d 734, 737–38 (Iowa 1982) (same); *Grist v. Upjohn Company*, 16 Mich.App. 452, 168 N.W.2d 389, 405–06 (1969) (same); *Lewis v. Equitable Life Assur. Soc.*, 389 N.W.2d 876, 886–88 (Minn. 1986) (same); *Bretz v. Mayer*, 1 Ohio Misc. 59, 203 N.E.2d 665, 668–71 (Ct.Common Pl.1963) (same); *Gore v. Health–Tex, Inc.*, 567 So.2d 1307, 1308 (Ala.1990) (rejecting doctrine of compelled self-publication); *Layne v. Builders Plumbing Supply Co.*, 210 Ill.App.3d 966, 155 Ill.Dec. 493, 500, 569 N.E.2d 1104, 1111 (1991) (same); *Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 585 A.2d 1022, 1025 (1991) (same); *Doe v. SmithKline Beecham Corp.*, 855 S.W.2d 248, 259 (Tex.App.1993) (same), *aff'd. on other grounds*, 903 S.W.2d 347 (Tex.1995); *Lunz v. Neuman*, 48 Wash.2d 26, 290 P.2d 697, 701–702 (Wash.1955) (same).

2. Other jurisdictions have adopted self-publication theories on the basis that the defendant knew or could have foreseen that the plaintiff was likely to repeat the defamatory statement. *See e.g., Neighbors v. Kirksville College of Osteopathic Medicine*, 694 S.W.2d 822, 824–25 (Mo.Ct. App.1985). This analysis lacks a compulsion requirement. The Court does not endorse this alternative theory.

repeat the actionable statement. Note, "A Unified Theory for Consent and Compelled Self–Publication In Employee Defamation: Economic Duress In Tort Law," 67 Tex. L.Rev. 1295, 1300 (1989). Compelled self-publication, however, raises different issues, as it negates the voluntariness of the republication. In the employment context, for example, job applicants often wield little power in the interviewing process, and in certain situations they must republish defamatory statements in order to satisfy prospective employers. *See, e.g., McKinney,* 110 Cal. App.3d at 792–93, 168 Cal.Rptr. 89 (deputy required to provide information of past termination to police departments to whom he was applying for jobs).[3] Compelled self-publication therefore falls outside the rule against voluntary republication, or at a minimum constitutes a palatable exception.[4] *See Elmore v. Shell Oil Co.,* 733 F.Supp. 544, 546 (E.D.N.Y.1988) (citing *Lewis,* 389 N.W.2d at 881). Courts justify this exception on the basis of the causal connection between the making of the statement and the compelled repetition. *Id.*[5]

▮ Maine courts recognize the theory of negligent publication in defamation actions; an analysis similarly grounded in foreseeability. In *Hill v. Town of Lubec,* the Supreme Judicial Court held that "[A] defendant need not intentionally communicate a defamatory statement to third parties; it is sufficient that it will be communicated to third parties." 609 A.2d 699, 701 (Me.1992) (quoting Horton and McGehee, *Maine Civil Remedies* § 20.7). In *Bedard v. Greene,* the court recognized that in rare instances liability attaches for slander in the case of negligent publication—where the defendant has created "an unreasonable risk that the defamatory matter will be communicated to a third person." 409 A.2d 676, 678 n. 4 (Me.1979) (quoting *Restatement (Second) of Torts,* § 577(1), Comment k, Illustration 4 (1979)).[6] The Restatement explicitly recognizes defamation stemming from negligent publication, *Restatement (Second) of Torts,* § 577, Comment k, and also extends liability for defamation not only to the originator of the defamatory statement, but also to others who repeat it, *id.* at § 578. The Maine Supreme Judicial Court often looks to the *Restatement* for guidelines. *See, e.g., Lester,* 596 A.2d at 69 (adopting § 558 of the *Restatement (Second) of Torts* (1977) on defamation); *Chapman v. Rideout,* 568 A.2d 829, 830 (Me.1990) (endorsing § 522(1) of the *Restatement (Second) of Torts* (1977) on negligent misrepresentation); *Knight v. Penobscot Bay Medical Center,* 420 A.2d 915, 917 (Me.1980) (adopting § 652B of the *Restatement (Second) of Torts*

**3.** In the context of employment the plaintiff-employee is under economic pressure to find another job, and as such can be said to be strongly compelled to publish the defamatory statement. Lying is not an acceptable alternative to republication. Repetition of the defamatory statement to friends or family, would not likely meet the compulsion standard. Publication is ultimately an issue of fact.

**4.** Courts generally recognize at least one other exception to the rule against voluntary publication of defamatory statements where defamatory letters are sent to blind or illiterate persons who must give, or publish the letters to another in order to have them read. *See Restatement (Second) of Torts,* § 577, comment m (1977).

**5.** The *McKinney* Court stated:

The rationale for making the originator of a defamatory statement liable for its foreseeable republication is the strong casual link between the actions of the originator and the damage caused by republication. This casual link is no less strong where the foreseeable republication is made by the person defamed operating under a strong compulsion to republish the defamatory statement and the circumstances which create the strong compulsion are known to the originator of the defamatory statement at the time he communicates it to the person defamed. 110 Cal.App.3d at 797–98, 168 Cal. Rptr. 89.

**6.** *See also Elms v. Crane,* 118 Me. 261, 265, 107 A. 852 (1919) ("[D]efendant is responsible for such repetitions of the libel and such publicity as are fairly within the contemplation of the original publication and are the natural consequences of it."); *Davis v. Starrett,* 97 Me. 568, 576, 55 A. 516 (1903) ("[I]t is a general principle that everyone is responsible for the natural and necessary consequences of his act. And it well may be that the repetition of a slander may be the natural consequences of the defendant's original publication. . . . we think it may be said with reason in this case that the repetition of the slander by those to whom it was uttered, and after that by others, may be regarded as fairly within the contemplation of the original slander, and a consequence for which the defendant may be held responsible.").

(1977) on invasion of privacy); *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me.1979) (adopting § 46 of the *Restatement (Second) of* Torts (1965) on intentional infliction of emotional distress).

 Maine's treatment of negligent publication mirrors the foreseeability analysis used by sister states recognizing defamation based on compelled self-publication. In both cases the essential question revolves around the foreseeability that the actionable statements will be published, whether by the defamed parties themselves, or by another party. Compelled self-publication, is thus, a derivative of negligent publication.

This Court concludes, based on Maine's position of negligent publication, coupled with the authority of the *Restatement,* that the Maine Supreme Judicial Court would recognize defamation under the compelled self-publication theory. The Court declines Plaintiff's invitation to recognize a new and distinct cause of action for compelled self-publication, but notes that in particular circumstances compelled self-publication folds neatly within the publication prong of defamation. The case at bar presents just such a scenario.

The Court is mindful of the potential abuses of the doctrine of compelled self-publication, yet is nonetheless confident that a rigid compulsion requirement will cabin any broad extension of tort liability. Jurors and trial judges are well equipped to temper this doctrine.[7] Additionally, the Court is cognizant of the potential exposure for employers, as well as the importance of communication between employee and employer. The Court, however, cannot ignore the injuries of employees fired in connection with defamatory statements. *See Lewis,* 389 N.W.2d at 886–88 (only one of four plaintiffs, terminated for defamatory reasons, found employment while being forthright about reason for past termination).

The Court finds that plaintiff has properly plead a cause of action for defamation. Mr. Carey has met the minimal requirements necessary to survive a motion to dismiss by pleading facts which show a potential for liability. In this instance the Court has construed the facts liberally in the favor of the plaintiff, as required at this stage of the proceedings. The Court, however, takes no position on the ultimate disposition of this claim.

### 2. Loss of Consortium

This Court has denied Defendants' Motion to Dismiss the defamation claim, and therefore denies the derivative loss of consortium claim, as well.

### C. Punitive Damages

 Plaintiff seeks punitive damages for Defendants' alleged defamation, Title VII and MHRA violations. Defendants correctly argue that such damages are not available under the MHRA. *Harris v. International Paper Co.,* 765 F.Supp. 1509, 1525, *vacated in part by,* 765 F.Supp. 1529 (D.Me.1991). The Court thus narrows Plaintiff's basis for recovery on the punitive damages count to those damages arising from the defamation and Title VII claims.

### IV. Conclusion

Accordingly the Court:

(1) *DENIES* Defendants' Motion to Dismiss all counts against MDI–HRC, and Counts IV, and V against MDI;

(2) *DENIES* the Motion to Dismiss the punitive damages claim, Count IV, as it relates to either the Plaintiff's Title VII claim, or defamation claim;

and

(3) *GRANTS* Defendants' Motion to Dismiss the punitive damages claim as it relates to the MHRA.

*SO ORDERED.*

---

7. In *Belcher v. Little,* the Supreme Court of Iowa noted: "What constitutes strong compulsion must of necessity be decided by the finder of fact under the circumstances in each case when substantial evidence of such compulsion is introduced." 315 N.W.2d at 738.