64                              442 Mass. 64 (2004)

White *v.* Blue Cross and Blue Shield of Massachusetts, Inc.

Roy Albert White *vs.* Blue Cross and Blue Shield of
Massachusetts, Inc.

Suffolk. February 2, 2004. - June 11, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Sosman, JJ.

*Libel and Slander. Actionable Tort.*

This court declined to recognize the doctrine of compelled self-publication
defamation under any circumstances, including where an employee claims
that the employer knew or should have known that the defamatory state-
ment regarding the employee was false, because of the doctrine's unpredict-
able effect on at-will employment, because the harm flowing from such
statements is more appropriately dealt with under principles of employ-
ment law, and because such doctrine runs counter to the privileges which
serve the important public purpose of promoting the free flow of informa-
tion in the workplace. [66-72] Cowin, J., dissenting.

Civil action commenced in the Superior Court Department on
July 9, 2002.

A motion to dismiss was heard by *Patrick J. Riley*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Harvey A. Schwartz* for the plaintiff.

*Joseph Halpern* for the defendant.

*Ben Robbins*, for Associated Industries of Massachusetts &
another, amici curiae, submitted a brief.

Marshall, C.J. Roy Albert White, a former employee of Blue
Cross and Blue Shield of Massachusetts, Inc. (Blue Cross),
commenced an action in the Superior Court seeking to hold
Blue Cross liable for allegedly defamatory statements made to
White while he was employed by Blue Cross and subsequently
communicated by White to prospective employers. A Superior
Court judge allowed Blue Cross's motion to dismiss for failure
to state a claim for which relief can be granted because White
conceded that Blue Cross had not communicated the defama-

tory statements to any third party. Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). White appealed, and we transferred the case here on our own motion to consider whether we should recognize the doctrine of compelled self-publication defamation.[1] We decline to do so, and affirm the judgment.

1. *Background.* As alleged in his complaint,[2] White was previously employed as a "quality initiatives manager" for Blue Cross. In January, 2002, he attended a meeting with representatives of Milton Hospital and Winchester Hospital to plan a conference for a health care financial management association. On March 19, 2002, White was called to a meeting with Patrick Cuniff, Blue Cross's director of human resources, and Allen Hinkle, its vice-president of innovation, quality, and cost. Hinkle informed White that a complaint had been received from Winchester Hospital to the effect that White, while in the presence of representatives from the other hospitals, had divulged the details of a confidential financial settlement between Blue Cross and Winchester Hospital. Hinkle told White he would be discharged immediately because of this conduct. White denied the accusation, and claims that he did not even know about any settlement between Blue Cross and Winchester Hospital, let alone divulge its details to anyone. Despite White's request that Blue Cross investigate the matter further, Cuniff did not do so, allegedly acting on the advice of a lawyer.

White subsequently applied for numerous jobs in health care management, to no avail. This was predictable, he alleges, because most prospective employers inquired about his reason for leaving Blue Cross. Because he refused "to lie," he was "compelled," he says, to reveal that he was discharged "for allegedly disclosing confidential financial information."

As noted earlier, White does not claim that Blue Cross com-

---

[1]The defamation doctrine at issue is variously called "compelled self-publication," see, e.g., *Cweklinsky* v. *Mobil Chem. Co.*, 267 Conn. 210, 212 (2004); "self-defamation," see, e.g., *Austin* v. *Inet Techs., Inc.*, 118 S.W.3d 491, 499 (Tex. Ct. App. 2003); "defamation by self-publication," see, e.g., *CIM Ins. Corp.* v. *Masamitsu*, 74 F. Supp. 2d 975, 990 (D. Haw. 1999); and "forced republication," see, e.g., *Atkinson* v. *Stop-N-Go Foods, Inc.*, 83 Ohio App. 3d 132, 135 (1992).

[2]We accept as true the allegations in the complaint, and such reasonable inferences as may be drawn from it in favor of the plaintiff. See *Eyal* v. *Helen Broadcasting Corp.*, 411 Mass. 426, 429 (1991).

66           442 Mass. 64 (2004)

White *v.* Blue Cross and Blue Shield of Massachusetts, Inc.

municated the alleged defamatory statements (the accusation that he improperly divulged confidential information) to any third person.[3] He argues that his own disclosure of Hinkle's accusation to prospective employers permits him to recover from Blue Cross for defamation because such disclosure should have been reasonably foreseeable by Blue Cross.

2. *Discussion.* To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement[4] regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss. See *Ravnikar* v. *Bogojavlensky,* 438 Mass. 627, 629-630 (2003). See also Restatement (Second) of Torts § 558 (1977). The publication element of defamation requires that the defendant communicate the defamatory statement to a third party. *Id.* at 629; *Hiles* v. *Episcopal Diocese of Mass.,* 437 Mass. 505, 519 (2002). Some courts, however, have recognized compelled self-publication as an exception to that requirement. Self-publication claims have arisen most frequently in the employment context where, as here, a discharged employee is called on to explain to prospective employers the circumstances of his discharge. See 1 R.D. Sack, Libel, Slander, and Related Problems § 2.5.2, at 2-81 — 2-82 (3d ed. 1994 & Supp. 2003). See also *McKinney* v. *County of Santa Clara,* 110 Cal. App. 3d 787, 795-796 (1980); *Theisen* v. *Covenant Med. Ctr.,* 636 N.W.2d 74, 83-85 (Iowa 2001); *Grist* v. *Upjohn Co.,* 16 Mich. App. 452, 483-484 (1969); *Lewis* v. *Equitable Life Ins. Soc'y,* 389 N.W.2d 876, 886-888 (Minn. 1986). The exception to the requirement of third-party publication is warranted, it is reasoned, because of "the strong causal link between the actions of the [employer] and the damage caused by the

_____

[3]The complaint included one count sounding in defamation, alleging a communication of the accusation by Cuniff to other members of the Blue Cross staff. Prior to this appeal, White filed a stipulation of dismissal of that count.

[4]By statute, Massachusetts permits a plaintiff to recover for a truthful defamatory statement published in writing (or its equivalent) with actual malice, G. L. c. 231, § 92, except as confined by the requirements of the First Amendment to the United States Constitution. See *Ravnikar* v. *Bogojavlensky,* 438 Mass. 627, 629 n.3 (2003); *Shaari* v. *Harvard Student Agencies, Inc.,* 427 Mass. 129, 131-132 (1998).

republication." *McKinney* v. *County of Santa Clara, supra* at 797.

Recognition of the doctrine of compelled self-publication defamation is far from unanimous. Some State courts of last resort have rejected it. See *Gore* v. *Health-Tex, Inc.*, 567 So. 2d 1307, 1308-1309 (Ala. 1990); *Cweklinsky* v. *Mobil Chem. Co.*, 267 Conn. 210, 226 (2004); *Gonsalves* v. *Nissan Motor Corp. in Haw.*, 100 Haw. 149, 171-173 (2002); *Sullivan* v. *Baptist Memorial Hosp.*, 995 S.W.2d 569, 571-574 (Tenn. 1999); *Lunz* v. *Neuman*, 48 Wash. 2d 26, 33 (1955).[5] This is also the view of the Restatement. Restatement (Second) of Torts § 577 comment m (1977) (rejecting self-defamation except where plaintiff repeats statement but is unaware of defamatory nature).[6] On the other hand, the highest courts of four States have adopted the doctrine. See *Theisen* v. *Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 83-84 (Iowa 2001); *Lewis* v. *Equitable Life Assur. Soc'y*, 389 N.W.2d 876, 886-887 (Minn. 1986)[7]; *Overcast* v. *Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000); *Hedgepeth* v.

---

[5]Other States have rejected the doctrine by statute. For example, in Colorado, the doctrine was adopted by *Churchey* v. *Adolph Coors Co.*, 759 P.2d 1336, 1343-1345 (Colo. 1988), but subsequently eliminated by statute. See Colo. Rev. Stat. Ann. § 13-25-125.5 (West 1997). See also *Volm* v. *Legacy Health Sys., Inc.*, 237 F. Supp. 2d 1166 (D. Or. 2002) (noting that Or. Rev. Stat. § 30.178[2] [2003], adopted in 1997 in response to *Downs* v. *Waremart, Inc.*, 324 Or. 307 [1996], precluded compelled self-defamation in employment context).

[6]Contrary to the dissent, *post* at 74-75, illustrations to the Restatement (Second) of Torts § 577 comment m (1997) do not support dispensing with the long-established requirement that the defendant must publish the defamatory statement to a third party. The Restatement's illustrations merely underscore that a defendant cannot invoke as a pretext defense that a defamatory letter was intended for the plaintiff alone where the defendant knows that the plaintiff, because he is blind, for example, must disclose it to a third party. See Restatement (Second) of Torts § 577 comment m, illustration 10. Here, White was fully aware of the statements he published to prospective employers. Unlike the illustrations, he was not required to republish the reason for his discharge because he did not understand it.

[7]In Minnesota, the doctrine recognized in *Lewis* v. *Equitable Life Assur. Soc'y*, 389 N.W.2d 876, 886-887 (Minn. 1986), is limited by statutes that disallow compelled self-defamation claims in certain circumstances. See Minn. Stat. Ann. § 181.962(2) (West 1993) (barring self-defamation claims based on employee's review of own personnel file); Minn. Stat. Ann. § 181. 933(2) (West 2004) (barring self-defamation claims based on employee's request of reason for discharge in writing).

*Coleman*, 183 N.C. 309, 313-314 (1922).[8] After a Federal District Court predicted that the Supreme Judicial Court of Maine would adopt the doctrine, *Carey* v. *Mt. Desert Island Hosp.*, 910 F. Supp. 7, 11-13 (D. Me. 1995), the court declined to reach the question. *Cole* v. *Chandler*, 752 A.2d 1189, 1193 (Me. 2000).[9]

White acknowledges that some appellate authority counsels against his argument, but invites us to adopt the doctrine of compelled self-publication where the employee claims that the employer knew or should have known that the defamatory statement was false. We conclude that, even in these circumstances, adoption of the doctrine is ill-advised. We recognize the conundrum faced by discharged employees who are required by prospective employers to explain the circumstances of their discharge. But as the leading authority on defamation has explained, compelled self-publication defamation in the employment context is "troubling conceptually." 1 R.D. Sack, *supra* at 2-84. "It is the termination and the reasons for it, not the communication, about which the plaintiff is actually complaining . . . ." *Id.* at 2-85. Any harm arising from the employee's discharge is more appropriately dealt with under principles of employment law, and not under the law of libel and slander. *Id.*

It is surely for that, among other reasons, that several courts have pointed to the doctrine's unpredictable effect on at-will employment. See *Cweklinsky* v. *Mobil Chem. Co.*, *supra* at 225-226; *Gonsalves* v. *Nissan Motor Corp. in Haw.*, *supra* at 172.

---

[8]The doctrine arguably has been adopted in Alaska. See *Odom* v. *Fairbanks Memorial Hosp.*, 999 P. 2d 123, 130-131 (Alaska 2000) (affirming dismissal of defamation claim by physician against hospital for reporting termination, as required by law, to national practitioner data bank); *id.* at 133-134 & n.1 (Fabe, J., concurring in part and dissenting in part) (noting that, although court's opinion does not so state, remaining claims for defamation were based on theory of self-publication).

[9]*Miller* v. *Butler*, 6 Cush. 71 (1850), is cited in Annot., Publication of Allegedly Defamatory Matter by Plaintiff ("Self-Publication") as Sufficient to Support Defamation Action, 62 A.L.R.4th 616, 625-626 (1988), for the proposition that Massachusetts has accepted the doctrine of compelled self-defamation. The *Miller* case, however, did not involve self-publication. Only one Massachusetts appellate decision has cited *Miller* v. *Butler*, *supra*, for the proposition that it may support the claim of self-defamation, but only to question the "vitality" of compelled self-defamation in Massachusetts. *O'Connell* v. *Bank of Boston*, 37 Mass. App. Ct. 416, 422 n.3 (1994).

442 Mass. 64 (2004)                                   69

White *v.* Blue Cross and Blue Shield of Massachusetts, Inc.

As the United States Court of Appeals for the Seventh Circuit noted, recognition of the doctrine of self-defamation, when combined with the doctrine of defamation per se,[10] "gives employees who regret not having negotiated an employment contract a tort surrogate for it." *Rice* v. *Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994), cert. denied, 514 U.S. 1111 (1995). White could have demanded an employment contract with Blue Cross, but did not do so. The law should not permit him to secure indirectly what he failed to negotiate directly. And contrary to the suggestion of the dissent, *post* at 79, compelled self-defamation is not "a natural extension of Massachusetts case law," but a dramatic departure from the principles governing employment at will.

White no doubt would counter that the harm he has suffered is occasioned not by his discharge, but by his failure to obtain alternative employment, an entirely foreseeable consequence, he argues, of Blue Cross's failure to investigate the truthfulness of Winchester Hospital's charge against him. But recognition of the doctrine of self-publication would run counter to another important aspect of employer-employee relations, an employer's privilege to "disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 509 (1984). Communications between former and prospective employers concerning an employee are similarly privileged. See *Burns* v. *Barry*, 353 Mass. 115, 118-119 (1967). These privileges serve the important public purpose of promoting the free flow of information in the workplace, and are lost only when the employer recklessly makes "unnecessary, unreasonable or excessive" publications. *Bratt* v. *International Business Machs. Corp.*, *supra* at 509, 515 n.11. There is no such claim here.

Recognition of the doctrine of compelled self-publication defamation brings with it the potential to stifle communication in the workplace. See *Cweklinsky* v. *Mobil Chem. Co.*, *supra* at

---

[10]Defamatory statements that harm a plaintiff's professional or business reputation are actionable without proof of economic loss. See *Ravnikar* v. *Bogojavlensky*, *supra* at 630.

220; *Gonsalves* v. *Nissan Motor Corp. in Haw.*, *supra* at 172; *Sullivan* v. *Baptist Memorial Hosp.*, *supra* at 573. Defamation litigation is costly. The expenditure of time, resources, and money required to defend a claim of compelled self-defamation inevitably will induce self-censorship by employers. See, e.g., *King* v. *Globe Newspaper Co.*, 400 Mass. 705, 708 (1987), cert. denied, 485 U.S. 940 and 485 U.S. 962 (1988) ("costs of litigation may induce an unnecessary and undesirable self-censorship"). The consequent harm to employees will be significant. Performance evaluations, which often inform discharge decisions, are a standard feature of modern management practices, and are widely endorsed as valuable to employees and employers alike. See, e.g., J. Katzenbach, Peak Performance: Aligning the Hearts and Minds of Your Employees 203-207 (2000). Beneath a dangling sword of defamation, employers are unlikely to provide employees with any reasons for employment decisions, including discharge, depriving employees of any opportunity to contest those decisions. See *Sullivan* v. *Baptist Memorial Hosp.*, *supra* at 574. There is surely nothing more harmful to a discharged employee who must tell a prospective employer, "I don't know why I was fired. I was never given a reason." A person in White's position can at least counter a false accusation if he is informed of it.

Blue Cross was well within its rights to give White any reason, a false reason, or no reason at all for his termination. *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 305 (1982) ("an employer has no duty to give any reason at the time of discharging an employee at will"). But at-will employees, no less than others, benefit immensely from open communications concerning their performance, prospects for advancement, and related matters, even if discharge results.

White argues that the "compulsion" element of the doctrine, that White was actually compelled to communicate the false information and that such compulsion was foreseeable to Blue Cross, will curtail any explosion of defamation litigation. We are not so sanguine. It is all but inevitable that a discharged employee will be called on to explain the circumstances of his discharge to prospective employers. And discharged employees will inevitably feel compelled to describe negative performance

442 Mass. 64 (2004) 71

White *v.* Blue Cross and Blue Shield of Massachusetts, Inc.

evaluations as reckless or false, whether communicated directly at the time of discharge, or contained in the employee's personnel file. The calculation of damages for self-defamation will also be unpredictable, and entirely within the control of the discharged employee. See, e.g., *Olivieri* v. *Rodriguez*, 122 F.3d 406, 409 (7th Cir. 1997), cert. denied, 522 U.S. 1110 (1998) (noting that employee retains control over publication and may "blurt out" to multiple prospective employers "ground of his discharge in the most lurid terms" to increase damages). Recognition of the doctrine also creates a perverse incentive for a plaintiff not to mitigate damages. See *Cweklinsky* v. *Mobil Chem. Co.*, 267 Conn. 210, 223-224 (2004); *Sullivan* v. *Baptist Memorial Hosp.*, 995 S.W.2d 569, 574 (Tenn. 1999).

There are, in addition, pragmatic reasons why the doctrine should be rejected. The search for future employment may extend over a considerable period. Even a discharged employee who secures new employment may later move to a new position, and will be called on to explain once more the circumstances of an earlier discharge. If the discharged employee is free to commence an action any time he claims to be harmed from self-disclosure of the "defamation," procedural rules, such as the statute of limitations become meaningless. See 1 R.D. Sack, *supra* at § 2.5.2, at 2-84 (compelled self-publication permits discharged employees "to control the manner and timing of the defamation as a litigation tactic" and "could also allow the plaintiffs effectively to void the statute of limitations"). As the dissent frankly notes, *post* at 73 n.1, the discharged employee may publish and republish the alleged defamatory statement "for the remainder of his professional life."[11]

We are mindful of the harm White may have suffered. The

---

[11]The Massachusetts cases relied on by the dissent do not concern self-publication by a plaintiff of a defamatory statement. See *post* at 75-76, citing *Bander* v. *Metropolitan Life Ins. Co.*, 313 Mass. 337, 347-348 (1943) (sufficient evidence for jury to find defendant liable where, as defendant anticipated, supervisor read letter from company addressed to plaintiff); *Rumney* v. *Worthley*, 186 Mass. 144, 145-146 (1904) (sufficient evidence for jury to find defendant liable where he had "good reason to believe" that plaintiff's daughter, a clerk in his store, would open and read letters pertaining to business before delivering letter to plaintiff); *Miller* v. *Butler*, 6 Cush. 71, 74 (1850) (letter containing defamatory statements mailed by defendants to third person). Because in those cases there was evidence that the defendant knew

reason for his discharge, if false, may have damaged the professional career of an innocent person. But where there was no legal obligation on Blue Cross to investigate Winchester Hospital's accusation about White, and no obligation on Blue Cross so much as to inform White of the accusation, *Cort* v. *Bristol-Myers Co.*, *supra* at 305, Blue Cross cannot reasonably be characterized as a "wrongdoer." *Post* at 73. White is in any event not bereft of remedies to compensate for any harm he has suffered. He may, for example, bring an action against Winchester Hospital for defamation, intentional interference with advantageous relations, or both. See, e.g., *Buster* v. *George W. Moore, Inc.*, 438 Mass. 635, 652 (2003). If defamation law is to provide a remedy for White, the correct party to be charged with culpability must be, as it always has been, the originator of the defamatory statement communicated to a third party.

*Judgment affirmed.*

Cowin, J. (dissenting). The court, citing public policy concerns, states that permitting compelled self-defamation to meet the "publication" element of defamation would be "ill advised." *Ante* at 68. In my view, it is at least as ill advised to allow employers, by their own reckless actions or omissions, to put employees in situations such as the one confronted by the plaintiff. The defendant here, by allegedly reckless indifference, caused foreseeable harm to the plaintiff. The plaintiff claims that the defendant had no basis for believing the accusation that was made against him, and that the defendant refused to make any effort to resolve the matter by investigation or otherwise prior to terminating his employment. The court expresses numer-

---

precisely the third party who would (and did) read the defamatory statement in a letter intended for the plaintiff, the defendant could not defend on the ground that the letter was addressed to the plaintiff alone. See *Miller* v. *Butler*, *supra* (addressee); *Bander* v. *Metropolitan Life Ins. Co.*, *supra* (supervisor); *Rumney* v. *Worthley*, *supra* (clerk). See also note 6, *supra*. There was in those cases no issue as to whether the *plaintiff* would republish the defamatory statement again and again and again, to anyone of his choosing. See *Burt* v. *Advertiser Newspaper Co.*, 154 Mass. 238, 247 (1891) (under *Miller* v. *Butler*, *supra*, defendant "is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual").

ous policy concerns, some wholly legitimate, about protecting employers and workplace communication. But in weighing the public policy interests in such a situation, where there is an absence of legislative direction on the subject, we should be at least as concerned with protecting the victim as we are with protecting the wrongdoer. Contrary to the court's conclusion today, the doctrine of compelled self-defamation is not the innovation it has been characterized to be, does not threaten at-will employment, and is not incompatible with the other principles of employment law cited. Therefore, I respectfully dissent.

If we accept as true the allegations in the complaint, see *Eyal* v. *Helen Broadcasting Corp.*, 411 Mass. 426, 429 (1991), the defendant received a false accusation from a customer, explicitly refused to investigate that accusation, repeated it to the plaintiff as the reason for firing him, and then suggested that the plaintiff lie about that reason during subsequent job interviews. The plaintiff then was faced with three equally untenable alternatives while interviewing with prospective employers. He could follow the defendant's advice and lie, he could refuse to answer questions regarding his termination, or he could answer those questions openly, thereby republishing a defamatory statement. The first option, lying, is not an acceptable alternative to republication, see *Carey* v. *Mt. Desert Island Hosp.*, 910 F. Supp. 7, 12 n.3 (D. Me. 1995), and the plaintiff should not be penalized for refusing to do so. The other two options, in the real-world context of the modern job market, are not practical because they will simply result in the plaintiff's failing to find subsequent employment.[1]

As the court acknowledges, the plaintiff's claim makes out a prima facie case for defamation, except for the publication element. See *Ravnikar* v. *Bogojavlensky*, 438 Mass. 627, 629-630 (2003). For at least fifty years, courts facing similar fact

[1] It has been suggested that the plaintiff simply can tell the truth and then dispute the defamatory remark by explaining its context. The idea that such an explanation would not often fatally harm the plaintiff's job prospects, especially in a competitive employment market, is wholly contrary to common sense and misses the point. If a defamatory statement concerning the plaintiff is false, he should not be burdened with the task of explaining its context for the remainder of his professional life.

patterns have allowed compelled self-defamation to satisfy this element, based on the simple and unremarkable tort law concept of foreseeability. See, e.g., *Raymond* v. *International Business Machs. Corp.*, 954 F. Supp. 744, 755-756 (D. Vt. 1997); *Carey* v. *Mt. Desert Island Hosp.*, supra at 11; *Chrzanowski* v. *Lichtman*, 884 F. Supp. 751, 755 (W.D.N.Y. 1995); *Odom* v. *Fairbanks Memorial Hosp.*, 999 P.2d 123, 130-131 (Alaska 2000); *McKinney* v. *County of Santa Clara*, 110 Cal. App. 3d 787, 797 (1980); *Colonial Stores Inc.* v. *Barrett*, 73 Ga. App. 839, 840-841 (1946); *Theisen* v. *Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 83 (Iowa 2001); *Grist* v. *Upjohn Co.*, 16 Mich. App. 452, 484 (1969); *Lewis* v. *Equitable Life Assur. Soc'y*, 389 N.W.2d 876, 886-888 (Minn. 1986); *Overcast* v. *Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000); *Chasewood Constr. Co.* v. *Rico*, 696 S.W.2d 439, 444 (Tex. Ct. App. 1985). See also *Rohan* v. *Networks Presentation, LLC*, 175 F. Supp. 2d 806, 816 (D. Md. 2001); *Booth* v. *Electronic Data Sys. Corp.*, 799 F. Supp. 1086, 1090-1092 (D. Kan. 1992); *Hedgepeth* v. *Coleman*, 183 N.C. 309, 313-314 (1922). Where circumstances are such that the defendant could have foreseen that the plaintiff would be forced to repeat a defamatory statement, these courts have concluded that the publication requirement of defamation may be met by the plaintiff's repetition of that statement, because of "the strong causal link between the actions of the [defendant] and the damage caused by the republication." *McKinney* v. *County of Santa Clara*, supra at 797.

Although the Restatement endorses self-defamation only where the plaintiff is "without an awareness" of the republished statement's defamatory nature, Restatement (Second) of Torts § 577 comment m (1977), a careful reading of that section reveals that it is compatible with the concept of compelled self-defamation as presented in this case.[2] Comment m is primarily concerned not with employment situations, but with letters sent

---

[2]The court characterizes my citation to the Restatement as seeking to dispense with the "long-established" requirement that the defendant must publish the defamatory statement to a third party. *Ante* at 67 n.6. On the contrary, I cite Restatement (Second) of Torts § 577 comment m (1977) to demonstrate that this requirement is paired with a "long-established" exception, whereby the publication requirement of defamation may be met by the actions of the plaintiff. This exception, as the court recognizes, includes situa-

by a defendant to a plaintiff, which the plaintiff then shows to a third person. The comment is accompanied by illustrative situations. In these, a letter is received by a blind plaintiff, or is written in a language the plaintiff cannot read, so that the plaintiff is "unaware" of the defamatory nature of the letter at the time he inevitably shows it to a third person who is able to read it or translate its contents. In these cases, the Restatement declares that the defamatory utterance is "published." *Id.* Although these hypothetical plaintiffs are characterized as being "unaware," one could just as easily describe them as being "compelled" to show the letters to a third person.[3] See also W.L. Prosser & W.P. Keeton, Torts § 113 at 802 (5th ed. 1984) (defendant can be liable for plaintiff's republication of defamatory matter where "because of the plaintiff's blindness or immaturity, or because of some necessity [the plaintiff] was under to communicate the matter to others, it was reasonably to be anticipated that he would do so").

While this court has not previously considered the narrow question whether compelled self-defamation satisfies the "publication" element of defamation, the concept of holding the original utterer of a defamatory statement liable for foreseeable republications is established here. See *Bander* v. *Metropolitan Life Ins. Co.*, 313 Mass 337, 347-348 (1943) (defamatory contents of sealed letter addressed to plaintiff could be considered published where defendant had "good reason to believe" letter would be opened and read by plaintiff's manager); *Rumney* v. *Worthley*, 186 Mass. 144, 145 (1904) (defamatory letter addressed to plaintiff could constitute publication if defendant "had good reason to believe" that plaintiff's

tions in which the plaintiff "must disclose [a defamatory statement] to a third party," and therefore it is reasonable to consider it in the context of this case. *Ante* at 67 n.6.

[3]The Restatement also contemplates that the original utterer of a defamatory statement may be responsible for foreseeable republications. See Restatement (Second) of Torts, *supra* at § 577 comment k (publication element of defamation can be met where "a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third person"). See also *id.* at § 576 ("The publication of a libel or slander is a legal cause of any special harm resulting from its repetition by a third person if . . . the repetition was reasonably to be expected").

daughter would open and read letter in plaintiff's absence). The *Bander* and *Rumney* cases were cited with approval by *Mc-Kinney* v. *County of Santa Clara, supra* at 796-797, a frequently cited case on the subject of compelled self-defamation.[4] Further, long before these cases were decided, this court stated that a defamation defendant was responsible for the "natural and probable publicity" subsequent to his original publication. *Miller* v. *Butler*, 6 Cush. 71, 74 (1850).[5]

As to the court's public policy rationale, permitting compelled self-defamation to meet the "publication" requirement of defamation is not incompatible with at-will employment. An employer is entitled to terminate an employee for any reason, or no reason, *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 305 (1982), provided public policy is not violated thereby. See *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149-150 (1989). As the court points out, even giving a false reason does not violate public policy. *Ante* at 70. See *Mello* v. *Stop & Shop Cos.*, 402 Mass. 555, 557 (1988), citing *Cort* v. *Bristol-Myers Co., supra* at 306. But a false reason and a defamatory reason are not the same thing. Nothing in the doctrine of at-will employment requires that an employer, in the context of discharging an employee, be permitted to speak knowingly or recklessly in a manner that defames the employee. *Van-Go Transp. Co.* v. *New York City Bd. of Educ.*, 971 F. Supp. 90, 103 (E.D.N.Y. 1997), quoting *Wright* v. *Guarinello*, 165 Misc. 2d 720, 725 (N.Y. Sup. Ct. 1995) ("A

---

[4]*McKinney* v. *County of Santa Clara*, 110 Cal. App. 3d 787, 796 (1980), also cited *Wilcox* v. *Moon*, 64 Vt. 450 (1892) (where sealed letter sent by defendant to plaintiff, publication element met if defendant knows plaintiff will need to have letter read by another). The *Wilcox* case was recently cited by *Raymond* v. *International Business Machs. Corp.*, 954 F. Supp. 744, 755 (D. Vt. 1997), as support for the proposition that "publication may be established if the defendant knows that of necessity the plaintiff must disclose the statement."

[5]The court goes to great lengths to explain the facts of *Bander* v. *Metropolitan Life Ins. Co.*, 313 Mass. 337 (1943); *Rumney* v. *Worthley*, 186 Mass. 144 (1904); and *Miller* v. *Butler*, 6 Cush. 71 (1850), and to assert that these cases did not involve compelled self-defamation. *Ante* at 71 n.11. I do not suggest that they did. I cite these cases merely to point out that one who utters a defamatory statement may be liable for the republication of that statement by another if such republication was foreseeable, and to demonstrate that concepts akin to compelled self-defamation are not unknown to Massachusetts jurisprudence.

license to fire at will does not carry with it permission to poison with immunity").[6] Permitting compelled self-defamation to satisfy the publication element of defamation will not curtail the employer's at-will rights. Vindication of the policies underlying employers' rights to terminate at-will employees may require that employers be given almost unlimited discretion to discharge. However, it does not require that employers also be permitted to defame the discharged employee with impunity. Both the employer and the employee have rights, and our system of justice has not become so effete that it cannot identify and enforce the rights of each class.

Moreover, the employer's conditional privilege is not abrogated by, nor is it inconsistent with, recognition of the concept of compelled self-defamation. The two concepts manage to coexist in other jurisdictions. See, e.g., *Herberholt* v. *dePaul Community Health Ctr.*, 625 S.W.2d 617, 624-625 (Mo. 1982) (accepting doctrine of compelled self-defamation [*Overcast* v. *Billings Mut. Ins. Co.*, *supra* at 70] but dismissing plaintiff's claim because of employer's privilege). See *Van-Go Transp. Co.* v. *New York City Bd. of Educ.*, *supra* at 105-106 (same). See also *Booth* v. *Electronic Data Sys. Corp.*, *supra* at 1091 (same). In Massachusetts, an employer has a "conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest." *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 512-513 (1984). This privilege is abused, and thus lost, when the employer utters a defamatory statement knowing it is not true, or with reckless disregard as to its truth. *Id.* at 514.[7] Thus, in order to recover for defamation against an employer, an employee must show that the statement

---

[6]In the context of employment, a defamatory remark uttered with knowledge of its falsity or with reckless disregard as to its truth is to be distinguished from a defamatory remark uttered with mere negligence, which is protected by the employer's conditional privilege. See discussion *infra*. See *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 513-515 (1984).

[7]The court cites *Bratt* v. *International Business Machs. Corp.*, *supra* at 509, 515 n.11, for the proposition that the employer's conditional privilege is lost "only when the employer recklessly makes 'unnecessary, unreasonable or excessive' publications." *Ante* at 69. That is a misstatement of the law. That case merely noted that "unnecessary, unreasonable or excessive publication" by itself, without proof of scienter, did not constitute an abuse of privilege.

78            442 Mass. 64 (2004)

White *v.* Blue Cross and Blue Shield of Massachusetts, Inc.

at issue was made with at least reckless disregard as to its truth. This differs from the ordinary defamation standard in which a private individual may recover by showing that the publisher was merely negligent in the publication of the falsehood. *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 858 (1975). Thus there is established a compromise between the employer's legitimate interest in open communication regarding its employees and the employee's interest in protecting his or her reputation. *Bratt* v. *International Business Machs. Corp.*, *supra* at 513, citing Restatement (Second) of Torts § 594 comment e, at 265 (1977).

If Blue Cross had spoken directly with a prospective employer of White instead of to White himself, the employer's conditional privilege would have applied unless Blue Cross spoke falsely intentionally or recklessly. *Bratt* v. *International Business Machs. Corp.*, *supra.* See *Burns* v. *Barry*, 353 Mass. 115, 118-119 (1967). The present case is no different. If Blue Cross were only negligent when it initially uttered the statement in question, White would have no claim. However, if White can show that Blue Cross had knowledge of the statement's falsity or acted with reckless disregard as to its truth, then Blue Cross would have abused and lost its privilege. Whether a conditional privilege is abused is a question for the jury, *id.* at 514, and thus in the present case the allegation of abuse ought to be left for another day. The court, however, prevents any further consideration of the matter by concluding that the mere existence of the employer's conditional privilege prevents White from bringing his claim in the first place. By the court's logic, the existence of any privilege would "run counter" to any defamation claim, whether it involves self-publication or otherwise. *Ante* at 69.

The court warns of the dangers of a culture of "self-censorship," but a culture of unremedied libel and slander is no more desirable from a public policy standpoint, and no more consistent with the promotion of open communication. *Ante* at 70. The court can think of "nothing more harmful" to a

---

*Bratt* v. *International Business Machs.*, *supra* at 515 & n.11. Reckless disregard for the truth, whether accompanied by "unnecessary, unreasonable or excessive" publication or not, constitutes an abuse of privilege.

hypothetical job seeker than having to announce, "I don't know why I was fired." *Ante* at 70. The court should be more imaginative. I am extremely skeptical that statements such as, "I was fired for revealing confidential information," or even, "I was accused of revealing confidential information," are somehow more likely to lead to new employment.

The court sympathetically announces that the plaintiff has remedies against the alleged originator of the defamatory remark, i.e., Winchester Hospital or its representative. However, in many self-defamation cases the defamatory statement originates with the employer, and a claim against some other party will not be available. See, e.g., *McKinney* v. *County of Santa Clara*, 110 Cal. App. 3d 787, 792 (1980); *Colonial Stores Inc.* v. *Barrett*, 73 Ga. App. 839, 840-841 (1946); *Lewis* v. *Equitable Life Assur. Soc'y*, 389 N.W.2d 876, 881 (Minn. (1986). The court understandably is concerned also that a plaintiff may distort an original oral statement while repeating it. Where the defamatory statement is expressed orally, the possibility of distortion is present, but this is simply a factual matter for resolution by the fact finder. These considerations do not persuade me that allowing a former employee to meet the "publication" element of defamation with his own forced repetition of the defendant's statements is unwarranted.

This case presents an issue ultimately best left to the Legislature. However, in my view, compelled self-defamation is a doctrine grounded in well-recognized tort principles. It is a natural extension of Massachusetts case law, and there is no urgent or overwhelming public policy rationale counselling against it. Therefore, in the absence of legislative direction explicitly barring compelled self-defamation from satisfying the publication element in defamation claims, the plaintiff should be allowed to proceed with this action.